The President and Directors of THE INSURANCE COMPANY OF NORTH AMERICA VS. SWINEFORD.

1. JURISDICTION: *What appearance waives service.*
2. OPENING DEFAULT. *Action on insurance policy; refusal to open default in answering, sustained.*

1. Where, after an order adjudging a defendant to have made default in answering, he asks for a stay of proceedings (which is granted) to enable him to move that he be relieved from his default and allowed to answer, this is such an appearance as waives any defect in the service of process.

2. In an action upon a fire insurance policy, commenced five months after the loss, where several of the defendant company's agents had investigated the loss before the action was brought, and ascertained all the facts relied on as a defense, it was not error to deny a motion by the company, made three months after the commencement of the suit, to be relieved from its default and allowed to answer.

3. The fact that the rules of the company required the pleadings in such actions against it to be sent to the home office for examination and advice, would not excuse the default. Such companies must conform their practice to the law regulating the time to plead.

ERROR to the Circuit Court for *Fond du Lac* County.

The action below (commenced January 4, 1870), was by *Salina Swineford* against the above named company, to recover $1,000, upon a policy of insurance against loss by fire. The policy ran to one Hartman, who was the owner of the property, and insured him to the amount of $1,000 on the house, and $200 on the furniture, etc. By an indorsement made by the company's agent, the policy was assigned and the loss made payable to the plaintiff, who held a mortgage on the property for a debt of $1,500 and interest. The complaint avers, *inter alia,* that the loss which is the subject of the action occurred on the 28th of April, 1869, and that on or about the 29th of the same month, "the assured gave due notice and proofs of the fire and loss aforesaid, which were received at the office of the defendant in accordance with the terms of said policy and as required.

by the conditions thereof, and duly demanded payment," etc. The policy is annexed to and made part of the complaint. One of its provisions is, that the amount of any loss shall be paid "sixty days *after due notice and proofs of the same* made by the assured and received at this office in accordance with the terms of this policy, hereinafter mentioned," etc. Another clause reads: "All persons having a claim under this policy shall give immediate notice thereof and render a particular account thereof, with an affidavit stating the time and circumstances of the fire," etc., etc. The complaint further alleges that no part of the mortgage debt to plaintiff has been paid, though the whole thereof is past due. The defendant company failed to answer.

When the cause was called for trial, the plaintiff made proof that defendant had complied with the laws of this state in regard to foreign insurance companies, and was authorized to issue the policy sued upon. She also made proof of her interest as mortgagee. She then put the policy in evidence. One Handt was then called, and testified as follows: "The policy was issued by the defendant. The building insured in it was totally destroyed by fire on the 28th of April, 1869. I am the agent of the defendant at Fond du Lac. I had notice of the fire; written notice was served upon me, and proofs were made by plaintiff and left with me more than sixty days before the commencement of this action, and I sent them to the defendant." He further testified to demand made by the plaintiff, and non-payment thereof. No other evidence was introduced.

Judgment was entered for the plaintiff on the 12th of April, 1870. On the 14th of the same month, Gerrit T. Thorn, Esq., "appeared specially in open court as counsel for defendant," and asked a stay of proceedings to enable defendant to move the court to take off the default and allow defendant to come in and answer. The court ordered all proceedings to be stayed for the term. On the 13th of May, being the last day of the term, defendant's counsel, upon his own affidavit, obtained a further stay for twenty days. On the 3d of June, defendant served on

plaintiff's attorney an order to show cause why the judgment should not be vacated and defendant permitted to answer; a proposed answer; an affidavit of merits; and affidavits excusing the default. The defenses set up in the proposed answer were, 1. That the policy was void because procured for a greater amount than the real value of the property, by fraudulent misrepresentations of Hartman as to such value. By the terms of the policy it was to be void if the assured should "make any false representations as to the character, situation, or occupancy of the property, or conceal any fact material to the risk," or if he should "make any attempt to defraud the company by false swearing or otherwise." 2. That the building was burned by the wilful act or procurement of Hartman, for the purpose of defrauding the company. It is also alleged that the real estate covered by the mortgage was worth $1,800 to $2,000, and was ample security for the mortgage debt; that no proceedings had been had to foreclose the mortgage; and that plaintiff took the assignment of the policy knowing it to be void. The affidavits to excuse the default stated, in substance, that defendant is a corporation created by the laws of Pennsylvania; that the general office and general agent thereof for the western department was at Erie, Pa.; that one Case was the general state agent for Illinois, Iowa, Wisconsin and Minnesota, with office and headquarters at Chicago, and "under the charge of the general western agency;" that said Case was also the "general adjusting agent of losses in the states aforesaid;" that "when legal proceedings or papers are served on local agents of the defendant, the practice is to forward them to the general western agency at Erie," and from there they are returned to Case at Chicago, with suggestions and instructions; that the summons and complaint in this action were served on Mr. Handt, defendant's agent at Fond du Lac in this state; that they did not come to Case's hands until the time for answering had expired; that as soon as the matter came to Case's attention, he commenced to make examination to ascertain facts preparatory to a defense;

that during the latter part of January and the month of February, Case was east on important business; that on his return from the east he received a severe bodily injury by a fall, by which he was laid up for a long time; that as soon as he became able to travel, he came to Fond du Lac to look after the cause and employ counsel to put in an answer for defendant; that on arriving there on the 13th of April, he found that judgment had been taken by default; that he employed Mr. Thorn as counsel to examine the matter for defendant; that Mr. Thorn was engaged at the time in the trial of a cause, and before he could obtain time to prepare an answer and the other papers necessary to accompany a motion to open the default, Mr. Case received a dispatch from St. Louis, Mo., which required him to go immediately to that city to look after important business then pending in a United States court; that Case could not dispose of this business and return to Fond du Lac until the 2d of June, the day when said affidavits were made; that there was no person who had a knowledge of all the facts of the case but Case, and he alone could furnish them to counsel; and that it "was the intention" of Case, and he believed it "was the intention of the general agent aforesaid, to prepare an answer in the action and make a defense on the merits;" but that he was "unacquainted with the practice of the courts in this state, and did not know what was necessary to be done until he took counsel as aforesaid, and that he was unavoidably occupied in the management of business and had moved in the matter as fast as he could, under the circumstances."

In opposition to the motion, plaintiff also filed her own affidavit, that of James Swineford, her husband, and that of Mr. Handt. The affidavit of Mr. Handt was to the effect that, as agent for defendant at Fond du Lac, he issued the policy sued upon; that he believed the property was not over-insured; that as soon as the summons and complaint herein were served on him, he sent them to Messrs. Case & Haywood, defendant's agents at Chicago, and received an immediate reply acknowl-

edging their receipt; that after the loss, Mr. Haywood, of said firm of Case & Haywood, came to Fond du Lac and investigated the loss personally; that Mr. Case did not come to that city until after this suit was commenced; that such information as was possessed by Case was derived from affiant and said Haywood, who were both familiar with the facts, and from one Jennings, who came to Fond du Lac as special agent of defendant to investigate the loss; that after the loss had been investigated by defendant's agents, and before suit commenced, affiant, supposing from his knowledge of the facts, and from communication with the agents of defendant, that the loss was to be paid, wrote to Mr. Downing, the general agent, enquiring why payment was not made, and Downing replied that the matter would be settled to the satisfaction of the insured; and that when Mr. Case first came to Fond du Lac, after the entry of the judgment, he had an interview with Mr. Swineford, at which affiant was present, and affiant supposed that the business of Case was to pay the loss, and that he intended to pay it.

The affidavits of Mr. Swineford and the plaintiff tended to show that the loan to Hartman, secured by the mortgage aforesaid, was made only upon condition that the property should be insured; that the assignment of the policy to plaintiff was procured in good faith, without knowledge of any facts which would avoid the policy, and because the mortgage without the policy was regarded as inadequate security; that the land alone was worth in fact less than the amount of the mortgage debt; that after proofs of the loss had been fully made, defendant made frivolous excuses for delay; that the commencement of the action was delayed for a considerable time from a conviction that the loss would be fully paid; and that this belief was caused by the assurances of the local agent, and also by a letter sent to such agent by Mr. Downing, the general agent.  This letter is attached to one of the affidavits; and in it, under date "Erie, Pa., October 19, 1869," Mr. Downing writes: "Yours of the 16th at hand.  The matter of the Hartman loss is still in the

hands of Messrs. Case & Haywood, who, we suppose, are as anxious as we are to have it cleared off. As the fire was evidently the work of an incendiary, the company certainly ought to take, and are entitled to take, a reasonable time to try and discover where the fault lies. * * * We presume the Hartman claim will soon be fixed up, if not to our satisfaction, at least to the satisfaction of the assured and his friends."

The plaintiff also filed an affidavit of one Rider, showing that he had been employed by defendant's general agent to estimate the cost of replacing the building destroyed, and had estimated it at between $1400 and $1500. As rebutting evidence defendant offered, but the court refused, the sworn estimate of said Rider, from which it appears that he estimated the cost of replacing said building at $1473.23; but that he estimated the actual value of the building destroyed at only $928.16, deducting one-third from the former amount for depreciation by reason of age. Defendant also offered in evidence, but the court refused, an extract from a letter written by Mr. Downing to Mr. Handt, under date "Erie, Pa., April 21, 1870," in which the writer states that he is surprised to learn that judgment has been entered in this action; that he did not understand that a hearing of the case would be had so soon, or that the company was liable to have judgment entered by default; that instructions had been given to Mr. Case to do what seemed to be necessary on the part of the defense, but unfortunately he (Case) had met with an accident which disabled him for some time, and so this matter was allowed to go by default; that the writer had instructed Mr. Case to make application for a new trial, etc., etc.; and that if Mr. Ca e had not sent any instructions, Mr. Handt was to employ an attorney to make application for an opening of the judgment, etc.

The court denied the motion to vacate the judgment and permit defendant to answer; and defendant took out its writ of error.

*Gerrit T. Thorn*, for plaintiff in error, contended that the

proof of service of summons was defective in that it failed to show, as required by the statute, that Handt, on whom the service was made, was "the authorized agent" of the defendant, "resident or doing business in the county" where the action was brought. *Frink v. Sly*, 4 Wis., 310; *Pollard v. Wegener*, 13 id., 569; *Upper Miss. Transp. Co. v. Whittaker*, 16 id., 220; *Farmer's L. & T. Co. v. Warring*, 20 id., 290. 2. No sufficient proof was made that the conditions of the policy in regard to notice and proof of loss were ever complied with. Had defendant appeared and moved for a nonsuit upon the evidence, it would have been granted. *Cornell v. Mil. Mut. Fire Ins. Co.*, 18 Wis., 387; *Blakely v. Ins. Co.*, 20 id., 205. 3. For the reasons already stated, and also because the defendant sufficiently excused the default, the court erred in refusing to vacate the judgment, and permit an answer. *Johnson v. Eldred*, 13 Wis., 482; *Butler v. Mitchell*, 15 id., 355.

*J. M. Gillet*, for defendant in error, to the point that any defect in the service of summons was waived by defendant's appearance and successive motions, cited *Upper Miss. Transp. Co. v. Whittaker*, 16 Wis., 220; *Tallman v. McCarty*, 11 id., 401; *Stonach v. Glessner*, 4 id., 275; and cases cited in Simmons' Digest under "Appearance." 2. As to the objection that the judgment was not sustained by the proofs, he argued, (1.) That the complaint being verified, and no answer filed, no proof was necessary, but plaintiff was entitled to judgment on motion. *Trumbull v. Peck*, 17 Wis., 265; *Bunker v. Rand*, 19 id., 254. (2.) That the proofs offered were sufficient. (3.) That the default was not excused; nor did the proposed answer even disclose any defense as against the assignee of the policy. To this latter proposition he cited *Tillou v. Ins. Co.*, 1 Seld., 405, approving 2 Coms., 210; 9 Wend., 404; 1 Coms., 293.

DIXON, C. J. The record shows that counsel for the plaintiffs in error, defendants below, appeared in open court and asked for a stay of proceedings to enable the defendants to

move the court to take off the default and allow the defendants to come in and answer, which stay was ordered by the court, and subsequently a further stay on like application. This was an appearance in the action, and a waiver on the part of the defendants of all previous defects in the service of process. *Upper Mississippi Transportation Co. v. Whitaker*, 16 Wis., 223; *Keeler v. Keeler*, 24 Wis., 522.

The objection that no proof was made, upon the inquest or assessment, of the giving of notice and proofs of the fire and loss to the company, as required by the policy and averred in the complaint, is hypercritical and unfounded. There was such proof, quite sufficient upon the entry of judgment by default, where the failure to answer is an admission of the facts alleged in the complaint.

The facts shown by the affidavits in excuse of the default and failure to answer, and as a reason for setting aside the judgment and letting the defendants in to a trial on the merits, are, in our judgment, insufficient. They show a case of inexcusable neglect and delay, and are in some respects inconsistent with good faith and fair dealing on the part of the defendants or their agents. The loss occurred more than eight months before the action was commenced, and it was over three months after service of process when judgment by default was taken. In the meantime, both before and after the commencement of the action, negotiations were pending for a voluntary settlement and payment of the loss. The liability of the company was not seriously denied, and promises of payment were made as well on the part of the general agent of the company as of one or more of its special agents. The plaintiff was induced to believe that her claim had been or would be allowed by the company, and payment made without objection. It furthermore appears that before the suit was commenced, and, the inference is, a considerable time before, the agents of the company—the local one at Fond du Lac, one of the general agents for the northwestern states at Chicago, and a special agent

deputed for that purpose — had fully investigated the facts touching the loss. It does not appear that any new fact or material circumstance has been discovered since those agents made their investigation. The facts are such as they ascertained, and as were known by them before the action was commenced. With eight months intervening, and three agents engaged in the investigation, the defendants should have been prepared at the end of that time either to pay or put in their answer. There was no good reason for their not having answered. The sickness, disability or business engagements of one of the agents at Chicago, was no excuse. His partner was not sick or disabled, and he had been upon the ground and knew the facts. The agent who was sick had not. The answer might have been prepared under the direction of either of the three agents who had investigated, and have been verified by any one of them. The failure to answer was, therefore, the result of mere inexcusable negligence on the part of the company or its agents, unless the practice of the company of requiring the pleadings in actions against it to be sent to the home office for examination and advice, made it otherwise. But such practice did not necessarily interfere with or prevent an answer in time ; and if it had, the question would be, whether the law should conform to the practice of the company, or the practice of the company to the law. We think the law would prevail in such a case, and that the company must so regulate its business as to conform to the law, unless some reasonable excuse is shown.

On the whole, we are of opinion that no case was made out to justify the setting aside of the judgment, and that the order of the court below was right.

*By the Court.*—Order affirmed.