## CHARLESTON.

FERRELL *v.* CAMDEN, *et al.*

Submitted February 8, 1905. Decided March 21, 1905.

1. DECREE—*Motion to Reverse—Duty of Circuit Court.*

When a motion is made under section 5, chapter 134, Code, to reverse a decree pronounced upon a bill taken for confessed, the court before which such motion is made should reverse the decree for an error for which this Court might reverse it, and give such decree as ought to be given upon the record as it exists at the time the motion is made. (p. 405.)

2. BILL CONFESSED—*Reversal of Decree Thereon—Defendants not Allowed to Answer.*

Upon the reversal of such decree, the defendants are not entitled to file their answers and make defense to the bill. (pp. 406, 407.)

3. BILL TAKEN FOR CONFESSED—*Decree.*

It is proper to take a bill for confessed as to all defendants thereto who have been personally served with process, or who have appeared in the cause and have failed to answer or make an issue therein. (p. 408.)

4. SPECIFIC PERFORMANCE—*Decree—Rehearing—Non-Resident Defendants.*

In a suit for the specific performance of a contract, where defendants have been proceeded against as non-residents by order of publication, and have appeared in the cause, but have not made defense therein, they are not entitled to have a rehearing, upon a petition filed for that purpose, on the ground that they were proceeded against as non-residents, and were not personally served with process. (p. 409.)

5. SPECIFIC PERFORMANCE AGAINST HEIRS—*Answer of Administrator.*

In a suit brought to enforce the specific performance of a contract, where the party with whom the contract is alleged to have been made, and against whose heirs the contract is sought to be enforced, is dead; and where the administrator and heirs of the de-

cedent are made parties defendant, an answer filed by the adminis-
trator, contesting the right of plaintiff to have specific perform-
ance, and denying the allegations of the bill, does not enure to the
benefit of his co-defendants, (p 415.)

.Appeal from Circuit Court, Webster County.

Bill by R. C. Ferrell againstt Myra H. Camden and others.
Decree for plaintiff, and defendants Martha M. Sommers and
others appeal.

*Affirmed.*

LINN, BYRNE & CATO, for appellants.

MORTON & COGAR and MOLLOHAN, McCLINTIC & MATH-
EWS, for appellee.

SANDERS, JUDGE:

This case has been in this Court twice on appeal hereto-
fore, and it is now before us on appeal for the third time, and
for the purpose of properly disposing of the questions pre-
sented by the present appeal, it will be well to give a state-
ment of the facts as they appear from the record since the be-
ginning of the litigation.

G. D. Camden, a citizen of Harrison county, in this State,
departed this life, leaving a widow, Myra H. Camden, sur-
viving him; and he also left surviving him Martha M. Som-
mers and Dora E. Ramsburg, his children, and Wilson L.
Camden and Mary G. Boggess, his grandchildren, descend-
ants of a previous deceased wife. He had no children by his
second wife, Myra H. Camden. He died seized and pos-
sessed of a large estate, among which were certain lands in
Webster county, the subject of this controversy; and after his
death, a writing, purporting to be his last will and testament,
was presented for probate. A contest sprang up in the court
between the widow and the children and grandchildren as to
whether or not said paper writing was such will. This con-
test was settled by a compromise, whereby it was agreed that
the said paper writing should be probated as such will, and
that the widow, children and grandchildren should convey the
property left by the said G. D. Camden to John J. Davis and
T. B. Camden as trustees, and that out of the proceeds of
such property the widow was to receive certain sums of
money, and the remainder of the estate was to go to the
children and grandchildren. After the said compromise, C.

W. Lynch was appointed and qualified as administrator *de bonis non* with the will annexed of said G. D. Camden, deceased.

. On the 21st day of February, 1895, R. C. Ferrell, the appellee, instituted a suit in the circuit court of Webster county against Myra H. Camden, widow and devisee of G. D. Camden, deceased, Martha M. Sommers, Dora E. Ramsburg, Robert M. Ramsburg, Mary G. Boggess, Wilson L. Camden, and John J. Davis and T. B. Camden, trustees, and C. W. Lynch, administrator *de bonis non* with the will annexed of G. D. Camden, deceased, setting up that G. D. Camden in his life time had, by written contract, in consideration of the sum of $4,000.00, sold to him several tracts of land situated in Webster county, and asking specific execution of the contract. The plaintiff exhibited with the bill as a basis for his suit the written contract, which appears in this case as first decided by this Court and reported in 49 W. Va. 225. Personal service of process was had upon T. B. Camden, John J. Davis and Myra H. Camden, widow of G. D. Camden, Martha M. Sommers and C. W. Lynch, administrator, and in July, 1895, there was an order of publication as to Robert M. Ramsburg, Dora E. Ramsburg and Wilson L. Camden; and on the 5th day of August, 1895, the following order was entered: "On motion of the defendants, and for reasons appearing to the court, sixty days are given to the defendants to file their answer or answers to the bill, and it is further ordered that the said defendants have leave to file said answers in the clerk's office of this court." Mary G. Boggess, during the pendency of the suit, and after the bill was filed, married A. D. Parr, and several processes were sued out against her and returned not served; and on the 8th day of September, 1896, one was sued out against her in which she was styled as "Mary G. Boggess, now Mary G. Parr," and the sheriff returned that he had served the process on that said Mary G. Parr. On the 5th day of November, 1895, C. W. Lynch, administrator, filed his separate answer, to which the plaintiff replied generally, the defendants, John J. Davis and Thomas B. Camden, not answering. The defendant, Myra H. Camden, on the 2nd day of April, 1897, filed her answer, in which she disclaimed all interest in the suit and in the property which was the subject matter thereof, and asked to be dis-

missed therefrom, to which the plaintiff replied generally; and leave was given to any party who had the right to do so, to reply specially thereto. The order entered filing the answer of Myra H. Camden, the general replication and permission to reply specially, is as follows: "The defendant, Myra H. Camden, this day tendered her answer and disclaimer to plaintiff's bill, to the filing of which the other defendants objected, which objection is overruled and the same is ordered to be filed, and the plaintiff replies generally thereto, and any party having the right may hereafter reply specially thereto." The decree entered on the 6th day of April, 1897, shows that the defendants, Martha M. Sommers, R. M. Ramsburg, Dora E. Ramsburg, Mary G. Boggess and Wilson L. Camden, tendered and asked leave to file their special replication to the answer and disclaimer of Myra H. Camden, and upon objection being made to the filing of said special replication, the court refused to allow the same to be filed, and by said decree of April 6th, 1897, the court decreed the specific execution of the contract set up in plaintiff's bill, and directed that Martha M. Sommers, Robert M. Ramsburg, Dora E. Ramsburg, Mary G. Parr, Wilson L. Camden, and Davis and Camden, trustees, convey to plaintiff the lands sold to him by G. D. Camden, with covenants of general warranty, and in default of their making the conveyance, special commissioners were appointed to do so. From this decree Martha M. Sommers, Robert M. Ramsburg, Dora E. Ramsburg, Mary G. Parr, Wilson L. Camden, and Lynch, administrator, applied for and obtained an appeal, and the cause was heard on the 16th of March, 1901, and said appeal was dismissed; the Court holding that the decree "having been rendered upon a bill taken for confessed, that no appeal would lie until a motion has been made to have the same reversed or corrected as provided in section 5, chapter 134 of the Code." 49 W. Va. 225.

On the 6th of September, 1898, the appellants in this cause, and C. W. Lynch, late Admr., &c., and R. M. Ramsburg, Admr., &c., presented to the judge of the circuit court of Webster county a bill of review in said cause, and asked that they be permitted to file the same, which permission was refused by the court; and thereupon the plaintiffs in the bill of review applied for and obtained an appeal from the order refusing them permission to file said bill of review, and upon

decision in this Court, the decree of the circuit court, refusing to permit the bill of review to be filed, was affirmed. See 50 W. Va. 119.

And then, at the August term, 1901, of the circuit court of Webster county, the defendants in the original cause and the appellants in the present appeal, Martha M. Sommers, Wilson L. Camden, Mary G. Parr and Dora E. Ramsburg, after having given notice thereof to the plaintiff, R. C. Ferrell, moved the court to reverse and set aside the decree entered on the 6th day of April, 1897, as provided by section 5, chapter 134, of the Code. And on the 5th day of August, 1901, the defendants, Dora E. Ramsburg and Wilson L. Camden, tendered and asked leave to file their petitions for a re-hearing of the cause, to the filing of which the plaintiff objected, and the court, on the 3rd day of April, 1902, sustained the objection and refused to permit them to be filed, and on the last named date the defendants, Martha M. Sommers and Genevieve B. Parr, tendered and offered to file their joint answer to the plaintiff's bill, and Dora E. Ramsburg and Wilson L. Camden each tendered and offered to file a separate answer to said bill, to the filing of each of said answers the plaintiff objected, and the court adjudged and decreed that leave to file said answers be denied, and that the decree of April 6th, 1897, in so far as it provides for the execution of a deed, be reversed and annulled, and in all other respects be allowed to stand, and that the appellant in this cause, as heirs at law of G. D. Camden, deceased, should execute and deliver to the plaintiff, Ferrell, a deed for the land by the former decree directed to be conveyed, with covenants of special warranty on the part of said heirs to the extent of assets descended to them from their ancestor, G. D. Camden, and upon their failure to do so, appointing commissioners for that purpose, and from this decree the appellants applied for and obtained an appeal.

The appellants assign three grounds for reversal. First, that the circuit court erred in refusing to set aside and annul in toto the decree of April 6, 1897. The appellants complain that upon application being made to the court below to have said decree set aside under section 5, chapter 134, of the Code, that the court acted upon the matter, but instead of reversing said decree, amended it as follows: "That the said de-

cree of April 6th, 1897, in so far as it provides for the execution of a deed be reversed and annulled and in all other respects be allowed to stand," and in lieu of that portion of the decree which was "reversed and annulled," provides that a deed of special warranty to the extent of assets descended to the heirs from their ancestor, G. D. Camden, be executed, instead of the one of general warranty required by the former decree to be made.

This involves that part of section 5, chapter 134, of the Code, which says: "The court in which there is a judgment by default, or a decree on a bill taken for confessed, or the judge of said court in the vacation thereof, may, on motion, reverse such judgment or decree, for any error for which an appellate court might reverse it, if the following section was not enacted, and give such judgment or decree as ought to be given. And the court in which is rendered a judgment or decree, in a cause wherein there is in a declaration or pleading, or in the record of the judgment or decree, any mistake, miscalculation or misrecital of any name, sum, quantity or time, when the same is right in any part of the record or proceedings, or when there is any verdict, report of a commissioner, bond, or other writing, whereby such judgment or decree may be safely amended,      *      *      *      may, on the motion of any party, amend such judgment or decree according to the truth and justice of the case." The plain meaning of this statute is to furnish some speedy and cheap remedy for the correction of judgments by default or decrees on bills taken for confessed, where there is error or mistake in them, by applying to the court in which the judgment or decree was pronounced, by simple motion, after due notice to the opposite side, pointing out the particular errors complained of, and asking for their correction; and thereby remedying the evil in the former practice of the courts, which compelled the parties prejudiced by errors in judgments or decrees of inferior courts, rendered in their absence, or without contest or resistance, to incur the expense and delay of an appeal or writ of error to an appellate court for the correction thereof. This statute prevents an appeal to this Court until this motion is made in cases of this character, and thereby saves to litigants large expense, and furnishes to them an easy, cheap and speedy remedy. In the trial of cases where there is no de-

fense, errors, through inadvertence, are likely to be committed, which, when presented to the court, are obvious, and can easily be corrected by the trial court without bringing the case into this Court, and thereby encumbering the docket of the appellate court with numerous appeals to correct errors which the lower court would hastily correct when called to its attention.

It is claimed that the court had no right to amend the decree except for "mistake, miscalculation or misrecital of any name, sum, quantity or time," but that the same should have been reversed in toto, and that, when so reversed, the parties should have been given the right to appear and make defense in the same manner as if the decree had not been entered. This provision in the statute which authorizes the amendment of any clerical error as to "any name, sum, quantity or time," applies to any decree or judgment· in which such mistake should be found to exist, and is not limited to a judgment taken by default or decree upon bill taken for confessed. But the first part of section 5, which authorizes the reversal of the judgment or decree, is limited to judgments taken by default, and decrees upon bills taken for confessed, and by authorizing the reversal of such judgment or decree, it enables the court to take up and consider the whole record of the case, and if, in the consideration thereof, there appears to be error in the decree, then the court is authorized to reverse it, if the error is such for which the appellate court would reverse; and in using the word "reverse," the statute only means to reverse it in the respects in which there is found to be error, and when it is reversed in this respect, to enter such decree as should have been entered in the first place, as the record of the case then was made. The trial court, in passing upon this motion to reverse and vacate the decree, sits as an appellate court over its own decrees, and has the right, under this statute, to reverse, amend or correct in all respects the same as the appellate court would have, and, when the decree is reversed, it then enters such decree as ought to have been entered in the first place. Now, if we did not have this statute, and this case could have been properly appealed to this Court, then this Court would, upon review of the decree, have considered the whole record, and entered such decree as the court below should have entered. Section 26, chapter 135. "The Supreme Court of Appeals

shall affirm the judgment, decree or order, if there be no error therein, and reverse the same in whole or in part, if erroneous, and enter such judgment, decree or order as the court whose error is sought to be corrected ought to have entered, affirming in cases where the court is equally divided."

It is argued that the defendants, when the decree is reversed, should be given a day in which to make defense, and not to do so works a great injustice against them, and materially prejudices their rights. This position is hardly tenable, because a case which falls within the provisions of said section 5, so as to call for a motion to correct or reverse the decree, proceeds upon the theory that a party has been personally served or has appeared, and when this is so, the party, of course, had a day within which to set up any defense that may have been thought proper to be made to said suit, and the defendants having done so, they cannot be heard to say now, after the final decree in the case has been entered, upon a bill taken for confessed, and which must be reversed for some error, that it should be left open for them, for another opportunity to make defense to the suit.

The next assignment of error is to the ruling of the court in refusing to permit the filing of the answer of the appellants, W. L. Camden, Dora E. Ramsburg, Martha M. Sommers and Genevieve B. Parr. In passing upon the first assignment, the question raised by the one now under consideration has been settled, for, if the bill was taken for confessed as to the defendants, then, under the conclusion reached, it was not proper for the court to permit their answers to be filed. A bill cannot be taken for confessed as to parties who are proceeded against by order of publication, but can only be so taken where the parties have been personally served with process, or appear and have failed to file an answer or make an issue, and, in cases of this character, to permit persons to stand by and wait until the record of the case has been made, the final order in the case entered, and then, because of some error in the decree, make a motion to reverse it, and be permitted to come in and prolong the litigation, certainly does not fall within the purview of this statute. Where parties who have been personally served with process or appeared in the cause choose to make no defense, they have the right, by motion, to correct any error which the court may have

committed, but this is as far as the privilege is extended them under this section. · They waived their right to make defense to the suit by not answering or making an issue, but did not, of course, waive the right to have the case properly tried upon the record as made, and, upon their motion to reverse, can only ask that that be done, that is, the correction of any error that may be found in the decree. This motion is only for the purpose of correcting an erroneous decree, and not to enable the defendants to open up the case for the purpose of making defense.

The last assignment of error is, that the court refused to permit the appellants, Dora E. Ramsburg and Wilson L. Camden, to file their respective petitions for rehearing, and grant them a rehearing of the cause. These parties having been proceeded against by order of publication, the question involved here is, whether or not they appeared in the cause, and, also, if they did appear, whether it was such an appearance as would prevent them from filing such petition. When this cause was in this Court for the first time, it was decided that the bill was taken for confessed as to all of the defendants except C. W. Lynch, administrator, and, inasmuch as the decree did not affect Lynch, and that as it was taken for confessed as to all of the other defendants, the appeal was dismissed, because the defendants' remedy was to move to correct any error in the decree under section 5, of chapter 134. But it is argued that the Court, in that case, said: "In the case at bar, there was no appearance to the bill except the defendant, C. W. Lynch, administrator of G. D. Camden, deceased, who filed his answer, and the defendant, Myra H. Camden, who appeared and filed her disclaimer." This language, it is true, was used in the opinion in this case, but when we look to the syllabus, and find that the Court decided that the bill was taken for confessed as to all of the defendants except Lynch, administrator, we must construe this language to mean that there was no *issue* made in the case except the one made by the filing of Lynch's answer. Then it is said that in the second appeal in this case, 50 W. Va. 120, Judge Brannon, in delivering the opinion of the Court, says: "There was no issue between Ferrell and the heirs." It is not only true that this statement was made in that case, but it is literally true from the record, because there has been no

issue made between these parties, nor is it necessary to make an issue in order to constitute an appearance in the cause.

When a person appears in a case for any purpose whatsoever, except where a special appearance is made for the sole purpose of objecting to the jurisdiction of the court over the person of the defendant because there was no service of process or because of defective service of process, or because the action was commenced in the wrong county, it amounts to an absolute submission to the jurisdiction of the court, and it is then immaterial whether process had been served upon him or not, but a personal judgment or decree can then be rendered against him as effectually as if process had been served personally upon him. "In those cases it seems that if the record merely shows an appearance by the party complaining, the judgment will not be treated as being by default, although he may neither demur or plead, or it may appear that he withdrew all his pleas and defenses." *Steenrod* v. *Railroad Co.*, 25 W. Va. and see *Stringer* v. *Anderson*, 23 W. Va. 482; *Golsby* v. *Strother*, 21 Grat. 107; *Compton* v. *Cline*, 5 Grat. 137.

It will only be necessary to refer to the proceedings in this cause to clearly show that all the defendants who were served personally, and also those who were proceeded against by order of publication, entered their personal appearance in this suit. On the 5th day of August, 1895, the order herein referred to in stating the case, shows that, "on motion of the defendants, and for reasons appearing to the court, 60 days are given to the defendants to file their answer or answers to the bill;" and then it appears by the decree of the 6th of April, 1897, that the appellants, Martha M. Sommers, R. M. Ramsburg, Dora E. Ramsburg, Mary G. Boggess and Wilson L. Camden, tendered and asked leave to file their special replication to the answer and disclaimer of Myra H. Camden, to the filing of which objection was made, and the court refused to permit it to be filed; but, nevertheless, this act constitutes an appearance of the defendants. Whether the court permitted the filing of this special replication or not, is immaterial. They appeared and asked leave to do so, and the fact that the court refused to permit it to be filed, because not a proper pleading, does not detract from the effect of it as an appearance. And then, on the 2nd day of April, 1897, the defendant, Myra

H. Camden, tendered her answer and disclaimer to the plaintiff's bill, the order showing the filing of which is: "The defendant, Myra H. Camden, this day tendered her answer and disclaimer to plaintiff's bill, to the filing of which the other defendants objected, which objection is overruled and the same is ordered to be filed, and the plaintiff replies generally thereto, and any party having the right may hereafter reply specially thereto." This order shows another appearance on the part of the defendants; that is, that when the answer and disclaimer of their co-defendant was tendered, the *other defendants* objected to its being filed. And, again, it appears by the decree of the 6th of April, 1897, that the defendants appeared and by agreement of counsel filed several copies of letters written by R. C. Ferrell, and agreed that they should be treated as the original letters; and, also, in the same decree, it is shown that the defendants appeared and asked for a suspension of the operation of the decree. Therefore, it will be seen that the defendants, on several different occasions during the progress of this cause, and before the decree of April 6, 1897, was entered, entered their full appearance in this cause. The decrees entered by the circuit court, showing that they appeared, are conclusive against them, and, in the light of all the authorities, there can be no question but what their acts constituted such an appearance as authorized the taking of the bill for confessed as to them. It is presented that the decree shows that the cause came on to be heard upon an order of publication as to the non-resident defendants· This, however, does not operate so as to prevent the bill being taken for confessed as to them, when, as a matter of fact, they had entered their appearance in the cause. And not only this, but this recital in the decree was a part of the record on the former appeal, when this Court, as before stated, decided that the decree was one upon a bill taken for confessed as to all of the defendants. "By appearance to the action in any case, for any other purpose than to take advantage of the defective execution or the non-execution of process, a defendant places himself precisely in a situation in which he would be if process were executed upon him, and he thereby waives all objection to the defective execution or the non-execution of process upon him." *Bank of the Valley* v. *Bank of Berkeley*, 3 W. Va. 386. And, also, see the

following authorities, which clearly show that the acts upon the part of the defendants constituted an appearance. *Frank* v. *Zeigler*, 46 W. Va. 614; *Shepherd* v. *Brown*, 30. W. Va. 13; *Totten* v. *Nighbert*, 41 W. Va. 800; *Groves* v. *County Court*, 42 W. Va. 587; *Lumber Co.* v. *Lance & Co.*, 50 W. Va. 636; *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149; *Harvey* v. *Skipwith*, 16 Grat. 410; 3 Cyc. 503 *et seq.*; *Ins. Co. of North America* v. *Swineford*, 28 Wis. 257; *Abbott* v. *Semple*, 25 Ill. 107; *Porter* v. *Chicago & Northwestern Ry. Co.*, 1 Neb. 14; *Protection Life Ins. Co.* v. *John R. Palmer, Admr., &c.*, 81 Ill. 88; *Beal* v. *Harrington, et al.*, 116 Ill. 113; *Ayers* v. *Western R. R. Corporation*, 48 Barb. (N. Y.), 132; *Grigg* v. *Gilmer*, 54 Ala. 425.

Now, was the appearance of the non-resident defendants such as to destroy their right to have the petition, which they tendered for the purpose of rehearing the cause, filed? Section 14, chapter 124, of the Code: "Any unknown party or other defendant, who was not served with process in this State, and did not appear in the case before the date of such judgment, decree or order,    *    *    *    may, within five years from that date, if he be not served with a copy of such judgment, decree or order,    *    *    *    file his petition to have the proceedings reheard in the manner and form provided by section 25 of chapter 106 of the Code, and not otherwise; and all the provisions of that section are hereby made applicable to proceedings under this section." And then, in section 17, of the same chapter, we find: "Any unknown party or other defendant who was not served with process in this State, and did not appear in the cause, may have the same reheard, and any injustice in the proceedings corrected within the time prescribed by the fourteenth section of this chapter." By the provisions of these two sections of the Code, in order that the defendants can have a rehearing of the cause, it is necessary that such defendants should not have appeared in the cause, but it is insisted that these two sections and section 25 of chapter 106 of the Code, should be construed together, and that, when so construed, that an appearance in the suit is not sufficient to deprive a non-resident defendant of the right to have a rehearing, but that the party must *appear and make defense*. It is true that in said section 25, we find: "If a defendant against whom, on publica-

tion, judgment or decree has been or hereafter shall be rendered, in an action or suit in which an attachment has been or may be sued out and levied as provided in this chapter. * * * But this section shall not apply to any case in which the petitioner, or his decedent, was served with a copy of the attachment, or with process in the suit wherein it issued, more than sixty days before the date of the judgment or decree, or to a case in which he appeared and made defense." This section, it will be seen, applies to proceedings wherein an attachment has been sued out and levied upon the property of the defendant, and, in this sort of proceeding, the Legislature has provided for a rehearing in certain cases therein mentioned, and in a case in which the defendant did not *appear and make defense*, but sections 14 and 17, of chapter 124, which are applicable to the suit here for the specific performance of a contract, contain no such language as *appear and make defense*, but provide that the simple appearance of the defendants defeats their right to file a petition for a rehearing of the cause. This question is well presented by counsel for the appellee, wherein they say: "According to the said sections 14 and 17, of chapter 124, the simple appearance of the defendants in the case, at or before the rendition of the decree, precludes them from this remedy. Were it otherwise this strange anomaly would exist: a nonresident defendant could appear at or before the rendition of the decree, and, if he did not make defense, he then could have the cause reheard within five years. Whereas if a resinent defendant should appear without any process at all against him, or on a defective process, or on a defective execution of a process, and make no defense, he would, under the law, be absolutely precluded by his appearance from any right to have the case reheard in this manner, while the nonresident defendant, though he appeared in exactly the same way, would have such remedy."

I think that the appearance which was entered by the defendants precluded them from having a rehearing of the cause.

The remaining question is, did the circuit court, in reversing and amending the decree of April 6, 1897, cure all the errors therein, or should it have reversed it in toto, and dismissed the plaintiff's bill? This involves the question as

to whether or not the plaintiff was put upon proof of the allegations of his bill, by reason of the denials contained in the answer of Lynch, administrator. If this answer enured to the benefit of the heirs, then the plaintiff was called upon for such proof; otherwise, if the answer did not enure to their benefit.

The plaintiff and appellee contends that the decisions of this Court, heretofore rendered in this cause upon this question, are *res adjudicata*, but whether this is so or not we will not decide, because it is immaterial, since we hold that the answer of Lynch, administrator, does not enure to the benefit of the heirs. It will be observed that the bill is filed for the specific performance of a contract between the plaintiff and G. D. Camden, deceased, and there is no allegation therein against the administrator or as to him, except the averment that he was appointed and qualified as such administrator. And the only reason why he was made a party, was because the bill prayed for alternative relief; that is, it prayed for the specific performance of the contract, and in the event the contract could not be enforced, then that there be decreed to him the amount which he claimed to have paid for the land. Had it not been for this allegation, seeking to charge the estate of G. D. Camden, deceased, with this debt, his administrator would not have been a proper or necessary party to this suit. This suit could have been for the specific enforcement of the contract alone, in which event the administrator would not have been a proper party. The interest represented by the administrator is entirely separate and distinct from the interest of the heirs. I am not unmindful of the numerous authorities holding that where a joint defendant answers a bill, and by proof removes the matter of equity set up against him and the other defendants, who fail to answer, there will be no decree against the defendants so failing to answer. But this is where the interest of the parties is joint, and where the equities are not separate and distinct. But a different rule prevails where the interests of the defendants are not joint, and where the bill alleges a distinct matter of equity against the party failing to answer.

Here the relief sought against the widow, trustees and heirs is entirely separate and distinct from that sought against the administrator. One was a decree for land, and

the other a decree for money; and the plaintiff, if no intervening equity had occurred, was bound to take the land and not the money.    He could not get both, and the fact that they both arose out of the same transaction, makes no difference. Ferrell could have sought either separately.    The defense made by a defendant can only go to the separate cause of action, and the relief sought against him.    "But where the parties are not jointly interested, or the defense is merely personal to the defendant filing the answer, an answer filed by one defendant does not enure to the benefit of his co-defendant."    Hogg's Eq. Pro., section 405.    "A judgment against the personal representative of a decedent is not even *prima facie* evidence of the debt against the heirs of such decedent.    And in a suit brought by the plaintiff in such judgment against the heirs to subject the real assets descended, such judgment against the personal representative will not prevent the heirs from relying upon the statute of limitations as a bar to the original cause of action in such suit."    *Saddler's Admr.* v. *Kennedy's Admr.*, et al., 26 W. Va. 636; *Broderick* v. *Broderick*, *Ex'r.*, etc., 28 W. Va. 378; *Merchants Nat. Bank* v. *Good*, *Admr.*, et al., 21 W. Va. 455. "There being no privity between the personal representative and the party to whom the real estate has descended or been devised, a judgment against such personal representative is not even *prima facie* evidence against the heir or devisee." *Laidley* v. *Kline*, *Admx.*, 8 W. Va. 218.    The case of *Findley* v. *Cunningham*, 53 W. Va., 1, bears no analogy to the case here.    That case was one to convene the creditors of the decedent to ascertain the debts against the estate, and to subject his estate, real and personal, to the payment of his debts. The Court held that the answer of an administrator, pleading the statute of limitations to a demand against the estate of his decedent, goes to the defense of both the personal and real assets, and, therefore, enures to the benefit of the heirs.    It was the duty of the administrator to defend the estate against all debts, and, therefore, to plead the statute of limitations, and when, under this plea, the debt was defeated as to the personalty, it could not be asserted against the realty; because it could not be a subsisting debt against one estate and not against the other.    But very different where a suit is brought to specifically enforce a contract made with the de-

cedent in his life time, there being no duty upon the personal representative to defend such suit, except in so far as it may seek to charge the estate with a debt in the event that specific performance could not be decreed.

In the case of *Terry* v. *Fontaine*, 83 Va. 451, Judge Lewis, in delivering the opinion of the court, held that the answer of the administrator enured to the benefit of his co-defendants, but cited no authority, analogous to this cause, to support this view; and did not refer to the point, except to say: "A sufficient answer, however, to this position is that the bill prays that the administrator be made a defendant to the suit, and that he be required to answer the allegations of the bill on oath. He did answer, denying the charges of fraud contained in the bill, and it would be without reason, and doubtless without a precedent, to enter a decree for the plaintiff against those defendants who failed to answer, when the record shows he is not entitled to a decree." But this suit was brought by Terry against the heirs and administrators of Fontaine and his sister, Mrs. Thompson, charging that after the contraction of the debt, Fontaine bought and paid for several tracts of land, and caused conveyances thereof to be made to his sister, without valuable consideration and with fraudulent intent, and that pursuant to a decree in another suit, the lands had been sold by a special commissioner of the court as the lands of his sister, to whom he had had them conveyed, and averring that the lands, in reality, belonged to Fontaine, and as such were liable to the satisfaction of plaintiff's judgment; that both Fontaine and his sister had died, and that since the rendition of the decree plaintiff had been informed that the said conveyances had been fraudently caused to be made as aforesaid. And the prayer of the bill was that the personal representatives and heirs be made parties defendant and required to answer; that the conveyances be set aside; that the land be decreed to be the estate of Fontaine; that the special commissioner who sold the same, and who had collected a part of the purchase money and taken bonds for deferred payments be enjoined, etc. All of the defendants made default, except the administrator of Mrs. Thompson, who demurred to the bill, and also answered. Testimony was taken, and, at the hearing, the bill was dismissed. Therefore, inasmuch as the special commissioner had sold these

lands which were charged to be the lands of Fontaine, as the property of Mrs. Thompson, and had collected part of the purchase money and taken bonds for the deferred payments, this money and these bonds, if not Fontaine's, were property to be administered by the administrator, and he, being the owner thereof in law, was required to defend the title thereto, and, in defending the title as administrator, the defense would, necessarily, also be for the benefit of the heirs.

After careful search, I fail to find a single authority, and counsel do not cite any, which holds that the answer of an administrator, in a suit for the specific performance of a contract, enures to the benefit of the heirs, when the matter of equity is separate and distinct, as it is in this case. But, on the contrary, the doctrine is that for the answer of one co-defendant to redound to the benefit of the other, their interests must not be separate and distinct. The answer of one defendant can only make an issue for another where the final relief sought, in its nature, affects all parties alike; and does not apply where separate and distinct relief is sought against different defendants, and where the relief sought to be decreed in no wise affects other defendants.

The decree of the circuit court is affirmed.

*Affirmed.*