SUSAN S. LITTLE v. HENRY STEPHENS, JR., ET AL.

*Equity pleading—Trust.*

1. By replying to a plea to the *whole* bill, instead of setting it down for argument, its validity is admitted, and the only question left for trial is the truth of the facts alleged in the plea. *Hurlbut v. Britain*, Walk. Ch. 455.

2. This case involves the alleged wrongful diversion of a trust fund by executors. And it is held that $13,000 belonging to complainant is conceded to have come into the hands of the executors, who paid interest thereon; and that the income thereof has been paid for a time since the death of one of the executors by his heirs, who are co-defendants with the other executor, the truth of whose plea is not established. And the decree dismissing complainant's bill is reversed, and the case remanded for an accounting, and the entry of a decree for the amount found due complainant thereon.

Appeal from Wayne. (Reilly, J.) Argued June 26, 1890. Decided October 31, 1890.

Bill for an accounting as to a trust fund. Complainant appeals from a decree dismissing her bill. Reversed, and case remanded for the accounting prayed for, and the entry of a decree for the amount found due the complainant thereon. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson,* for complainant, contended:

1. If there are any directions in the instrument creating a trust, they are to be explicitly followed, as are any rules of court or statute provisions existing in any state; and in the absence of these, the trustees must exercise their best judgment in good faith. Trustees should not make investments which will take the trust funds beyond the jurisdiction of the court, and ordinarily they will be held responsible for the amount so invested unless specially authorized so to do; citing *Preston v. Wilcox*, 38 Mich. 583; *Ormiston v. Olcott*, 84 N. Y. 339; *Rush's Estate*, 12 Penn. St. 375; *Amory v. Green*, 13 Allen, 413; *In re Baptist Church*, 51 N. H. 424; and a trustee exceeding his authority must bear all of the losses and account for all of the profits; citing *Martin v. Raborn*, 42 Ala. 648; and if a trustee see his co-trustee exceed his authority, he is in like manner liable; citing *McIntire's Adm'rs v. Zanesville*, 17 Ohio St. 352; and nothing will protect them for disregarding directions if there is a loss; citing *Spering's Appeal*, 71 Penn. St. 11.

2. If complainant had a claim enforcible against the estate of Henry Stephens, deceased, she may still pursue the same under How. Stat. § 5946; and see *Hoffman v. Beard*, 32 Mich. 218.

*Otto Kirchner*, for defendants (except George R. Stephens), contended:

1. The truth of the plea was the only issue to be tried; citing Chancery Rule No. 25; *Hurlbut v. Britain*, Walk. Ch. 454; and the burden of proof is on the complainant; citing 1 Dan. Ch. Pl. & Prac. 849, 850.

2. The estate of Henry Stephens being closed, all claims against his estate are barred. There is no remedy in equity after the lapse of the statutory period; citing *Winegar v. Newland*, 44 Mich. 367; *Brown v. Forsche*, 43 Id. 492; and such is the doctrine of the Supreme Court of the United States; citing *Morgan v. Hamlet*, 113 U. S. 449.

LONG, J. Complainant filed her bill in the circuit court for Wayne county in chancery, asking for the appointment of a trustee in the place and stead of Henry Stephens, deceased, and George R. Stephens, who were named as executors and trustees under the last will and testament of John Stephens, deceased, father of complainant, under and by virtue of whose last will and testament a trust fund was created for the benefit of complainant that was received by Henry Stephens in his life-

time, and George R. Stephens, as trustees, and which was, as alleged by complainant in her bill, misappropriated by said Henry and George R. Stephens, during the life-time of said Henry Stephens, on account of which complainant alleges a liability upon their part to account to a new trustee.

The bill avers, substantially, that John Stephens died in October, 1881, leaving a last will and testament, which was duly probated, in which he appointed Henry Stephens, George R. Stephens, and Robert P. Toms executors and trustees to carry out the trust created by the will; that Mr. Toms refused to accept the trust, but that Henry and George R. Stephens qualified as such executors and trustees, and entered upon the discharge of their duties; that Henry Stephens was the brother of John Stephens, deceased, and John Stephens was the father of George R. Stephens, and of complainant; that said John Stephens left an estate aggregating in value the sum of $105,000, which estate was devised and disposed of by the fourth, fifth, sixth, seventh, and eighth paragraphs of his last will and testament. The fifth paragraph referred to provided that all sums of money advanced to his children, or either of them, on his books, or on the books of John Stephens & Sons, or that were represented by promissory notes, should be deducted from the share or portion of the child or children having received such advance. The sixth and seventh paragraphs referred to provided as follows:

"*Sixth.* I give, devise, and bequeath all the rest, residue, and remainder of my estate, real, personal, and mixed, of every name and nature, and wheresoever situated, to my executors and trustees hereinafter named, or to the survivor or survivors of them, in trust for the following uses and purposes, viz.:

"That my executors and trustees, or the survivor or survivors of them, shall, as soon as practicable after my

decease, enter upon and take possession of the residue of my estate of every name and nature, and sell and dispose of the same,—except my stock in the Second National Bank of Detroit, and the merchandise and property of John Stephens & Sons, which I wish to have disposed of, if practicable, so as to carry out the copartnership agreement existing between myself and my sons, John E. and George R. Stephens, under the firm name of John Stephens & Sons,—on such terms and conditions as they, or the survivors of them, shall deem for the best interest of my estate, and convert the same into money; and, after payment of all my just debts, legacies, funeral expenses, and expenses of administering my estate, and erecting tombstones, etc., as hereinafter provided, they or the survivors of them shall divide the same into eight equal parts or portions, and pay the same over to my children in equal portions, share and share alike, except the shares or portions intended for my daughters, Susan Little, wife of Robert A. Little, and Mary S. Lamson, wife of George W. Lamson, which are to be retained, controlled, and managed by my executors and trustees, or the survivor or survivors of them, as hereinafter directed.

"*Seventh.* I do will and direct that my daughters, Mary S. Lamson and Susan Little, shall have the right to elect and take, toward their shares or portions, capital stock in the Second National Bank of Detroit, in equal proportions, at its then market value, and the same shall be taken and holden by my executors and trustees, or by the survivor or survivors of them, for the interest, benefit, and advantage of my daughters, Mary S. Lamson and Susan Little, and the child or children then surviving, as hereinafter mentioned: *Provided*, That my executors and trustees, or the survivor or survivors of them, if from any cause they shall deem it prudent and for the best interests of my children that said bank-stock should be sold, they, or the survivors of them, have full power and authority to sell the whole, or any portion thereof, on such terms and conditions as they shall deem for the best interests of my estate."

The eighth clause referred to provided that the share or portion the income of which should belong to his daughters, Mary S. Lamson and Susan Little, should be taken and held by his executors and trustees, or the sur-

vivor or survivors of them, in trust, to invest the money arising from the same in the name of the executors and trustees for the time being of his will, in or upon any bonds of the United States, State of Michigan, or on any productive and unincumbered real estate in the city of Detroit, or in the capital stock of the Second National Bank of Detroit, or its successor, and to transpose such investments for other investments of the description aforesaid, and pay the net interest or income derived therefrom to his said daughters, Mary S. Lamson and Susan Little, in equal proportions, share and share alike, for and during the term of their natural lives; and said clause further authorized said executors and trustees, in the event of finding the income from the shares and portions that should be held by them for said Mary S. Lamson and Susan Little to be insufficient for their support and maintenance, or of either of them, to advance out of the principal to each a sum, not exceeding $300 in any one year; and upon the death of said daughters, Mary S. Lamson and Susan Little, or either of them, it directed that such executors and trustees should pay over such income to the child or children of said Mary S. Lamson and Susan Little.

Complainant further claims that said John Stephens left surviving him eight children, and, under the provisions of said will, a sum in excess of $13,000 came into the hands of, and was received by, said Henry Stephens and George R. Stephens, as trustees under such will, for investment, under the terms and provisions thereof, on account of the share of complainant, Susan Little, and a like sum on account of the share of the daughter Mary S. Lamson; that the said John Stephens was the owner at the time of his decease of stock of the Second National Bank of Detroit, of the par value of $20,000, which came into the hands of such executors and trustees; that they

neglected to invest the share of said daughters, Mary S. Lamson and Susan Little, in such stock, but sold thereof stock of the par value of $10,000 to Gen. R. A. Alger, and the remainder, being stock of the value of $10,000, was transferred to said Henry Stephens, one of said trustees; that in February, 1883, thereafter, the charter of the Second National Bank aforesaid expired by limitation, and the officers and directors thereof organized, as successors to such bank, the Detroit National Bank, which succeeded to the interests of the Second National Bank; but, notwithstanding the fact that such stock was desirable as an investment, neither of said executors applied for any stock of said Detroit National Bank or sought in any manner to invest the shares of the said daughters, Mary S. Lamson and Susan Little, in the stock of such bank, although the said Henry Stephens individually applied for and received, on his own account, as has been claimed by his heirs, $20,000 in stock of the reorganized bank; that the said trustees not only failed to make any effort to invest the shares of said daughters in the stock of said bank, or in any bonds of the United States, or State of Michigan, or in any productive and unincumbered real estate in the city of Detroit, as directed by the provisions of said will, but did invest the same in a cattle ranch, in the territory of Wyoming, or in the stock of a corporation organized by said executors to carry on the business of conducting a cattle ranch in said territory.

That Henry Stephens, one of said trustees, deceased in the winter of 1885–86; that the said Henry Stephens in his life-time, and the administrators of his estate after his death, paid to the complainant, Susan S. Little, up to July, 1888, what was represented to be the income upon her share in her father's estate, but, after that date, the complainant was unable to procure the same, and thereupon caused investigation to be made as to how the

share of said estate, in which she was so interested, was invested, and then, for the first time, learned the facts to be as hereinbefore stated; that in the mean time the said Henry Stephens had deceased, and said George R. Stephens had removed from the State of Michigan to Wyoming territory, and had become financially irresponsible; that during the time that the administrators of the estate of Henry Stephens, deceased, who were two of his heirs at law, were paying to the complainant what they represented to be the income upon her interest in her father's estate aforesaid, they proceeded with the administration of the estate of said Henry Stephens, had the same distributed among the heirs, all of whom are named as defendants to this her bill, and said estate closed, so that, when the complainant ascertained that the trust fund created for her benefit had been thus diverted and misappropriated, the said George R. Stephens had removed from the State of Michigan and become financially irresponsible, and the estate of said Henry Stephens had been distributed and closed.

The will is made an exhibit to the bill. The bill prays for an accounting, that a new trustee may be appointed, and that the defendants be required to pay into his hands the trust funds that came into the hands of Henry Stephens and George R. Stephens. The defendant George R. Stephens has never been brought within the jurisdiction of the court. There is no averment in the bill that any part of this trust fund came into the hands of the defendants, except the averment that the stock of the Detroit National Bank—the alleged successor of the Second National Bank—came into the hands of Henry Stephens, deceased, in his life-time, as a part of the estate of John Stephens, deceased. It is, however, averred in the bill that the trustees, Henry and George R. Stephens, invested the same, or a large part thereof, in

the live-stock business, in the territory of Wyoming, and that, at the time of this investment, the stock in the Second National Bank referred to in the will of John Stephens was transferred to Henry Stephens individually, who retained it during his life-time, and that it was finally passed to his estate upon his decease, and was distributed among his heirs.

To this bill the defendants, the heirs at law of Henry Stephens, deceased, severally pleaded that no part of the goods and property which belonged to John Stephens in his life-time, and which came to the hands of Henry Stephens in his life-time, as trustee as aforesaid, has come to them, of either of them, and that they never had, and had not at the time of pleading, in their possession, custody, or control any part or portion of said money, property, or effects. In aid of this plea it was further averred that the Second National Bank of Detroit ceased to exist on February 26, 1883; that it never had a successor; and that the Detroit National Bank was not and is not the successor of said Second National Bank of Detroit.

To these pleas the complainant interposed a replication. The testimony of Mr. Clement M. Davison was taken by the complainant. Upon the issue thus made, and upon the hearing in the court below, decree was entered dismissing complainant's bill. Complainant appeals.

It is now contended by the solicitors for the complainant—

1. That the testimony of Mr. Davison, who is cashier of the Detroit National Bank, and who was cashier of the Second National Bank, establishes the fact that the stock of the Detroit National Bank came to the hands of Henry Stephens as trustee under the will of John Stephens, deceased.

2. That this stock was distributed to the defendants, as heirs at law of Henry Stephens.

It is also contended by complainant's solicitors that if these facts are not shown yet the complainant, upon the facts stated in her bill, is entitled to the relief prayed upon the ground that Henry Stephens, by the misappropriation or diversion of the trust fund received by him during his life-time for the benefit of the complainant, became legally and equitably obligated to the complainant for the amount of such trust fund, and that complainant had an equitable lien at his death upon his estate and assets, to the extent of having said trust fund made good therefrom, which lien she is entitled to have enforced as against the distributees of said estate. The complainant is not in a position, however, under the issue framed by the pleadings, to insist upon this last proposition as a basis of claim against the defendants. The plea was to the whole bill. If complainant had desired to test the sufficiency of the plea, she should have set it down for argument instead of replying thereto, When the complainant chose to reply, insteading of setting the plea for argument, the validity of the plea was admitted, and the only question to be thereafter tried was the truth of the facts alleged by the plea. Lube, Eq. Pl. 50, 51; Chancery Rule No. 25; *Hurlbut v. Britain*, Walk. Ch. 455.

The only questions, therefore, open for discussion here arise under the first and second propositions made by complainant's counsel, and they rest entirely upon the testimony of Mr. Davison, as he gave the only testimony in the case. Defendants' counsel in his brief summarizes the testimony of Mr. Davison as follows, which is substantially correct:

" He testified that he was the cashier of the Second National Bank of Detroit until the expiration of its charter; that upon the organization of the Detroit National Bank he became its cashier; that at the time of his death

John Stephens held stock in the Second National Bank to the value of $10,000. He, at one time, had held $20,-000, but had sold $10,000, before his death, to Governor Alger. The $10,000 he held at the time of his death was transferred to his executor Henry Stephens, in October, 1882. The Second National Bank charter expired on the 26th day of February, 1883. The Detroit National Bank went into business at the same place, and with substantially the same gentlemen as its principal officers. About one-half of the holders of stock in the Second National Bank did not acquire stock in the Detroit National. There was no connection between the stock in the old and in the new organization. If a man took stock in the new bank he paid for it. There was no such thing as an exchange of old stock for new. The full par value was paid in on the new organization in money,—not by an exchange for old stock. It was not the aim in any instance to give the old stockholders stock in the new bank, but to give it to parties who would be of service to the bank. The new bank was an entirely new organization. Witness held stock in the old organization, but held none in the new. The capital stock of the Detroit National Bank had been all paid in before any part of the assets of the Second National Bank had been distributed among its stockholders. It was the policy of the new bank to distribute its stock to business men,—people who could help it. Henry Stephens took $20,000 stock in the new bank."

It appears from this testimony that, although the Second National Bank stock was transferred to Henry Stephens as executor and trustee under the will of John Stephens, yet, at the time of the dissolution of that bank, and the winding up of its affairs, this stock was paid for in money, which came into his hands as trustee. He subsequently took $20,000, in his own name, of the stock of the new corporation. While it is true that there is nothing in the record showing that this stock was taken for the estate of John Stephens, and it is denied by the plea, yet the direction in the will was that the stock of the Second National Bank should be held by the exec-

utors and trustees for the interest and benefit of those two daughters; or, if sold and disposed of, that the proceeds should be invested in bonds of the United States, State of Michigan, or any productive and unincumbered real estate in the city of Detroit, or the capital stock of the Second National Bank, or its successors, by the trustees. It is hardly to be presumed in the face of such a provision in the will that Henry Stephens, now deceased, deliberately put the fund of these two wards into a venture where the chances of loss were so great, but that the bank-stock, while taken in his individual name, was really held as the trust fund. But whether this be so or not, we do not think the truth of the plea established by the testimony. It is not contended but that $13,000 belonging to the complainant came into the hands of the executors, and they have paid interest thereon, and that since the death of Henry Stephens his heirs, the defendants in this cause, have for some time paid the income over to the complainant. The court was in error in dismissing complainant's bill.

The decree of the court below must be reversed and set aside, with costs of both courts. The cause will be remanded to the court below, and an account taken, and decree entered there against the defendants, for the amount found due to complainant on such an accounting.

The other Justices concurred.