NILES *v.* LEE.

1. PLEADING— EQUITY PRACTICE— REPLICATION— JUDGMENT— DECREE SUSTAINING PLEA.

The effect of filing a replication to a plea in equity, after a decree sustaining the sufficiency of the plea, is to admit its sufficiency. When issue is taken upon a plea, either in the first instance or after it has been allowed upon argument, if the truth of the matters pleaded is established, the suit is barred so far as the plea extends.

2. RES JUDICATA—EQUITY— JURISDICTION OF REAL PROPERTY.

Complainant, having submitted to the court of a sister State a cause of action involving realty in Michigan, was bound by the decree of the court finding that there was not partnership in the real estate and that a deed executed by complainant was not obtained by fraud.[1]

3. SAME.

An injunction of the foreign court will be respected here.

[1] Jurisdiction over suits affecting real property in another State or country, see note in 69 L. R. A. 673.

Appeal from Monroe; Golden, J. Submitted January 17, 1912. (Docket No. 91.) Decided March 29, 1912.

Bill by William E. Niles against Andrew E. Lee for an injunction and to establish an alleged interest of complainant in certain property. From a decree dismissing the bill, complainant appeals. Affirmed.

*William H. Murray,* for complainant.

*Charles Scribner Eaton, Frazer, Griswold & Slyfield, Willis Baldwin,* and *John O. Zabel,* for defendant.

BLAIR, J. In June, 1909, complainant filed his bill of complaint in the circuit court for Monroe county, in chancery, alleging, among other things, that on or about November 12, 1908, he purchased at a receiver's sale all of the property of the Toledo, Ann Arbor & Detroit Railroad Company, in the State of Michigan, "for and in behalf of himself and Andrew E. Lee of Vermillion, South Dakota, jointly"—

"That after and during the months of January, February, and March, 1909, your orator purchased and contracted for the purchase for a railroad, rights of way, etc., from Dundee to Jackson, Mich., as trustees for your orator and said Andrew E. Lee. * * * That on May 1st, 1909, * * * said Andrew E. Lee stated to your orator at that time that he had a good chance to dispose of the properties above mentioned, to the mutual advantage of your orator and himself. * * * Mr. Lee stated that he would be able to take care of the matter personally alone, and that he would be able to handle the matter more expediently in that way, and that he had already prepared a deed from your orator to himself, which would save him time and trouble of coming to your orator to sign papers when he had the deal closed. * * * Your orator stated to said Andrew E. Lee that before executing any such deed that they should have a contract drawn up so that they would know what their respective rights were, and said Lee said, 'I have trusted you five or six months, and now you can't trust me?' Your orator

stated, 'Yes; I can if you will give me your word of honor that you will protect me in this matter in the same manner as I have you, and also protect my wife in case of my death.' And said Lee stated that he would do so. Your orator, relying upon and believing the representations and statements of said Andrew E. Lee, went across the hall with said Andrew E. Lee to the office of a notary public, and executed, acknowledged, and delivered to said Andrew E. Lee a deed, a copy of which is hereto attached marked 'Exhibit A,' and made a part of this bill of complaint; that at the time of the execution, acknowledgment and delivery of said deed, and in the presence of said Andrew E. Lee, your orator stated to the notary public who took said acknowledgment and to the witness to the same that said deed was simply a trust instrument between your orator and said Andrew E. Lee.    *    *    *    That said Andrew E. Lee, as your orator is informed and believes, and therefore charges the truth to be, previous to May 1st stated to divers persons that he was the sole owner of said lines of railroad in the part heretofore mentioned, and that Mr. Niles would have no more to do with the road, clearly showing that said Lee intended to secure this deed from your orator, not for the purpose of making it convenient for him to close a deal for the sale of the property, but to cheat and defraud your orator out of the same and appropriate it to his own sole use and benefit."

The bill prayed:

"(2) That he may be restrained from in any manner selling, assigning, transferring, incumbering, or in any manner disposing of the property herein referred to until the further order of this court.

"(3) That the deed hereinbefore referred to from your orator to said Lee may be by this court declared to be null and void, and that said Lee be required to reconvey the interest conveyed by said deed back to your orator, or that in default of such conveyance on his part that a copy of the decree of the court herein may be recorded in the office of the register of deeds of the counties of Monroe and Washtenaw may have the same effect as such reconveyance."

The deed executed by "William E. Niles, trustee, and William E. Niles in consideration of Andrew E. Lee assuming the payment of two notes made," etc., and the

payment by Lee of all unpaid installments of the purchase price of the property, conveys—

"To Andrew E. Lee, trustee, the undivided half interest of said William E. Niles, trustee, and all the right, title and interest of said William E. Niles in and to the right of way and all other property, whether real or personal, of said the Toledo, Ann Arbor & Detroit Railroad Company, situate in the State of Michigan which property was, on the 12th day of December, 1908, sold by said receivers of said the Toledo, Ann Arbor & Detroit Railroad Company to said William E. Niles and Andrew E. Lee, trustee, and all rights of way purchased by said William E. Niles for a line of railroad from Toledo, Ohio, to Jackson, Michigan, and all interest in or options for such rights of way purchased or contracted for by said William E. Niles."

The defendant pleaded in bar a former adjudication in the circuit court for Clay county, South Dakota. The plea was sustained, and a decree entered dismissing the bill of complaint. Complainant appeals to this court.

The suit in South Dakota was instituted May 22, 1909, the complaint alleging that the plaintiff, Niles, and the defendant, Lee, on or about the 10th day of December, 1908—

"Formed a partnership for the purpose of purchasing, holding, improving, operating, and mortgaging, selling, and conveying a certain line of railroad known as the Toledo, Ann Arbor & Detroit Railroad located in the State of Michigan, together with the appurtenances, rights, privileges and franchises appertaining thereto, or which might thereafter be secured in connection with said railroad business; that by said copartnership agreement it was provided that the plaintiff and defendant should contribute jointly and ratably their time, skill, labor, and money, so far as might be necessary to carry out the aforesaid purposes of said copartnership, and should co-operate in the care and labors of the business, and that they should share equally in the net profits of said enterprise upon a sale of said railroad property or upon the dissolution of said copartnership;" that, in pursuance of said agreement, they purchased said property; "that on or about the 1st day of May, 1909, the plaintiff and defendant mutually agreed to dissolve said copartnership, and

the defendant thereupon offered and agreed to withdraw from the firm and to assign, transfer, and set over to the plaintiff, or to whomsoever said plaintiff might designate, all his, the said defendant's, right, title, and interest in and to said partnership property, and especially to the property hereinbefore mentioned and described, and terminate said partnership relation if plaintiff would pay or cause to be paid to the defendant the amount of money which he had previously expended in connection with said partnership business; that the plaintiff acted in reliance upon said agreement, and has offered and still offers and hereby tenders to the defendant the total amount of defendant's expenditures in connection with said business, and said plaintiff is ready, able, and willing to carry out the terms of said agreement, but that the defendant, wrongfully and fraudulently disregarding his said agreement, has refused, and still refuses, to carry out the terms thereof, and to make a conveyance and assignment of his interest in said business, and that defendant wrongfully, fraudulently, and unlawfully now claims to be the sole and absolute owner of the property hereinbefore described, and threatens to sell and convey the same and to convert the proceeds to his own use to the plaintiff's great damage and injury."

For a second cause of action, the complainant alleges the formation of a partnership and the purchase of the property substantially as in the first count:

"That on or about the first day of May, 1909, the plaintiff was induced to and did make a purported assignment of his interest in the above-described property to the defendant; that said assignment was procured by the defendant by reason of his false and fraudulent representations, to the effect that he desired the same as security for certain obligation of the partnership, for which he was liable, and also for the purpose of enabling him, the said defendant, to negotiate a sale of the partnership property for the benefit of the said copartnership; that the defendant at that time expressly stated and represented to the plaintiff that he would in all things protect the plaintiff's interests in relation to said property, and would share equally with him in the net proceeds of any sale which he might be able to effect; that the plaintiff relying upon the promises and representations of the defendant, above

mentioned, did execute and deliver said assignment, as aforesaid, and for the purposes hereinbefore stated; that said assignment was wholly without consideration, and was executed and delivered, as the said defendant well knew, for the purpose of facilitating the transaction of the partnership business, as aforesaid. That the said defendant wilfully disregarding his aforesaid promises and agreements with the plaintiff, and with the wrongful and fraudulent intent to cheat and defraud the plaintiff, and deprive him of his interest in the assets of said copartnership, now claims to be the sole owner of said partnership property, and threatens to sell and dispose of the same, and to apply the proceeds thereof to his sole use and benefit thereby defrauding the plaintiff to his great damage and injury. * * *

"Wherefore, the plaintiff demands judgment:

"(1) That the said copartnership be adjudged to have been dissolved, and that the defendant be required, by the judgment of this court, to assign and convey to the plaintiff all his rights, title, and interest in and to the above-described property and assets of said copartnership in conformity with the terms of the agreement of dissolution as set forth in plaintiff's first cause of action herein.

"(2) That if it shall be determined by the court that said copartnership has not heretofore been dissolved that the same be forthwith dissolved by judgment of this court.

"(3) That an account be taken of all of the said copartnership dealings and transactions from the commencement thereof, and of the moneys received and paid by the plaintiff and defendant, respectively, in relation thereto, and of the value of the time and services of the plaintiff and defendant in and about said copartnership business.

"(4) That, if necessary, the property of the firm, real and personal, including all claims, rights, and franchises, be sold and the copartnership debts and liabilities be paid off, and the surplus, if any, divided between the plaintiff and defendant according to their respective interests.

"(5) That in the meantime the defendant may be enjoined from collecting or receiving or in any manner interfering or intermeddling with or mortgaging or incumbering or assigning and disposing of any of the partnership debts, moneys, property, franchises, appurtenances, or other property or effects of said partnership.

"(6) That a receiver of the partnership moneys, prop-

erty, credits, effects, rights, and franchises may be appointed with the usual powers and duties.

" (7) And for such other and further relief as may be just, with the costs of this action."

Defendant answered the complaint, denying that the parties ever entered into a partnership, setting forth his version of the agreement at length, denying any fraud whatever on his part, alleging that the only assignment made was the deed hereinbefore referred to, which was taken in good faith and for the consideration therein stated, and praying as a counterclaim:

"(1) That the plaintiff's action be dismissed.

"(2) That the title of this defendant be confirmed in the defendant.

"(3) That the plaintiff and all persons claiming by, through, or under him be forever enjoined and restrained from in any manner interfering with the title of defendant to the property in question and to every part thereof.

"(4) That the defendant have such further and other relief as the facts considered may seem to the court just and equitable, besides costs of this action."

Plaintiff filed an answer to the counterclaim, containing, among other paragraphs, the following:

" The plaintiff denies that he ever intended to or did convey to the defendant his right, title, and interest in and to said railroad property and its appurtenances, but realleges that the assignment or conveyance, mentioned in the complaint and answer herein, was procured from him by false and fraudulent representations on the part of the defendant and in trust for a specific purpose, as set forth in the plaintiff's complaint herein, and that plaintiff is still the equitable owner of an undivided one-half interest in said railroad property and its appurtenances."

The cause came on for trial before the court and a jury November 1, 1909. Plaintiff testified as a witness on his own behalf. The jury found a special verdict as follows:

"*First.* Did the plaintiff, William E. Niles, and the defendant, Andrew E. Lee, in November or December, 1908, form a partnership for the purpose of purchasing

the railroad referred to in the complaint in this action?" Answer: "No."

"*Second.* Was the transfer of the plaintiff, Niles, to the defendant, Lee, of May 1, 1909, of said Niles' interest in said railroad property merely for the purpose of securing said Lee for obligations for which the said Lee had become liable?" Answer: "No."

"*Third.* Was the said transfer referred to in the last question for the purpose of enabling said Lee to negotiate a sale of said railroad property?" Answer: "No."

"*Fourth.* At the time of the transfer referred to in the foregoing question, did the defendant, Lee, state or represent to the plaintiff, Niles, that he, Lee, would protect the plaintiff's (Niles') interest in said railroad property?" Answer: "No."

The court found the facts as claimed by defendant and in accordance with the special verdict, with the following conclusions of law:

"(1) That the deed herein referred to, a copy of which is above set forth, is a good and valid deed and transferred to the grantee therein named all the right, title, and in• terest of every kind and nature whatsoever that the said William E. Niles had in the property in said deed mentioned and described individually and as trustee.

"(2) That the defendant is entitled to judgment quieting and confirming his title to all of said property, and a judgment restraining plaintiff from in any manner interfering with the title of the defendant to the property in question, and every part thereof, or in any manner interfering with said property, or any part thereof, and to a judgment dismissing the plaintiff's complaint and for costs of this action."

On the 30th day of November, 1909, judgment was duly entered, whereby it was—

"Ordered, adjudged, and decreed that the deed, a copy of which is set forth in said findings of fact, dated May 1, 1909, executed by the plaintiff under the name of W. E. Niles and W. E. Niles, trustee, to Andrew E. Lee, trustee, and purporting to convey to the defendant under the name of Andrew E. Lee, trustee, the undivided half interest of said William E. Niles, trustee, and all the right, title, and interest of said William E. Niles in and to the right of

way and all other property whether real or personal of the Toledo, Ann Arbor & Detroit Railroad Company, situate in the State of Michigan, which property was on the 12th day of December, 1908, sold by Willis Baldwin and Isadore R. Burgoon, receivers of said railroad company, to said William E. Niles and Andrew E. Lee, and all rights of way purchased by said William E. Niles for a line of railroad from Toledo, Ohio, to Jackson, Mich., and all interests in or options for such rights of way purchased or contracted for by the said William E.Niles, was and is a good and valid deed, and the same was executed and delivered for the purpose of transferring and the same did transfer to the defendant, the grantee therein named, all the right, title, and interest of every kind and nature whatsoever that the said William E. Niles individually and as trustee had or owned at that time in the property mentioned and described in said deed.

"And it is further ordered, adjudged, and decreed that the title and ownership of all said property be, and the same is hereby, confirmed in the grantee named in said deed, and the plaintiff individually and as trustee, and all persons claiming or to claim by, through, or under him are hereby perpetually enjoined and restrained from in any manner interfering with said property, and every part thereof, and with the defendant's possession thereof."

On April 28th the plea was sustained as to its sufficiency by the circuit judge and 10 days allowed to join issue. On May 8th complainant filed a replication to the plea on the merits.

Complainant's brief presents two points for our consideration, viz. :

(1) As to the sufficiency of the plea in form.
(2) As to the truth and merits of the plea.

The first question is disposed of by the replication to the plea on the merits (*Hurlbut* v. *Britain*, Walk. Ch. 454; *Hurlbut* v. *Britain*, 2 Doug. 191; *Little* v. *Stephens*, 82 Mich. 596 [47 N. W. 22]; *Flagg* v. *Bonnel*, 10 N. J. Eq. 82).

"For it is well-settled that when issue is taken upon a plea either in the first instance, or after it has been allowed upon argument, if the truth of the matters pleaded is established, the suit is barred, so far as the plea extends."

*Bogardus* v. *Trinity Church,* 4 Paige (N. Y.), 178. *Vide* page 195.

*Second.* As to the merits of the plea. Complainant's contention, as stated in the brief, is as follows:

"The South Dakota court found there was no partnership, nor would there have been under the laws of Michigan. The foreign court having found there was no partnership, it had no further jurisdiction. The case then resolved itself into a dispute between two individuals over title to real estate in Michigan. It is a primary principle supported by a long line of decisions that, if a suit relates to a mere question of title, it must be tried in the district where the land lies, for, if the subject-matter of the controversy lies without the limits of the court's control and where its process cannot reach the *locus quo,* it has no jurisdiction."

Complainant voluntarily instituted suit in South Dakota, and submitted his rights with reference to the property in question to the jurisdiction of the proper court in that State. The essence of his claim was that the defendant procured from him, by fraudulent and false representations, an assignment of his interest in the property in question, on account of which he prayed to be restored to his rights therein. The defendant answered, denying all of the material allegations of the complaint and also asked for affirmative relief. A full and fair trial was had and all of the material facts were found against complainant's contentions, and, among others, that no fraudulent representations were made as alleged but the deed was intended to be, and was, a good-faith transfer of complainant's interest. Complainant filed notice of appeal, but failed to perfect it, and the judgment is a final judgment.

The case presented to the South Dakota court was one proper for equitable cognizance, not only as involving partnership transactions, but also upon the ground of fraud and breach of trust. And, if complainant had succeeded in sustaining his allegations of fraud, he would have been entitled to a decree for a reconveyance, which would have been binding upon the conscience of the de-

fendant. *Noble* v. *Grandin*, 125 Mich. 383 (84 N. W. 465); *Sullivan* v. *Kenney*, 148 Iowa, 361 (126 N. W. 349); note to *Proctor* v. *Proctor*, 69 L. R. A. 673. It logically follows that the decree finding that the deed was not obtained by fraud, but was a valid conveyance, was binding upon complainant.

It is also clear that the provision in the decree for an injunction is valid as a decree *in personam*, and should be respected by the courts of other States. *Hart* v. *Sansom*, 110 U. S. 151 (3 Sup. Ct. 596); *Dunlap* v. *Byers*, 110 Mich. 109 (67 N. W. 1067); *Burnley* v. *Stevenson*, 24 Ohio St. 474 (15 Am. Rep. 621).

The decree is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.