AVERY AND ANOTHER V. AVERY.

Where parties intermarried in a State where the property of the wife became the property of the husband on marriage, and afterwards moved into another State where the wife was allowed to acquire and hold separate property, and in the latter State the husband exchanged one of his slaves for a slave the title to which he caused to be made to his wife in compensation or exchange for one that he had received from her by marriage, and the parties afterwards moved to this State bringing their slaves with them, and the husband died, it was held that the widow was entitled, against his legal representatives, to the slave so acquired through her husband.

An administrator cannot impeach, for the benefit of creditors, the consideration of a voluntary conveyance made by his intestate.

Where suit was brought for the recovery of a slave, and the jury found the following verdict, "We, the jury, find for the plaintiff, with $80 damages and costs of suit," and the judgment was for the slave and damages and costs of suit, and it was objected that the verdict was insufficient to support the judgment, it was held that the verdict was sufficient, under the uniform decision of this Court, that if by a reference to the record any uncertainty in the verdict can be explained, it will be sufficient to sustain the appropriate judgment.

Where a single piece of property is sued for in specie and not in the alternative of damages, and is sequestered and remains in the hands of the Sheriff, unreplevied, it is sufficient to find such piece of property for the plaintiff without assessing its value. This case distinguishable from that of Blakely v. Duncan, 4 Tex. R. 184.

Error from Cherokee.

*S. P. Donley*, for plaintiff in error.

*Henderson & Jones* and *J. C. Everett*, for defendant in error.

LIPSCOMB, J. This suit was brought by the defendant in

error, against Avery, one of the plaintiffs in error, to recover a negro slave. After Richard Avery had been discharged from the administration on the estate of James S. Avery, Green was appointed administrator of the said estate, and on his application, was permitted to be made a party defendant. The defence set up was, that the slave sued for was a part of the property appertaining to the estate of the said James S. Avery, deceased, and not the separate property of the widow, the plaintiff in suit. The material facts are, that James S. Avery, intermarried with the plaintiff, in the State of Georgia, and by his marriage became the owner of a certain slave, the property of his wife at the time of his marriage; that he always called the slave so acquired, the property of his wife; and becoming a good deal embarrassed, he ran the said slave to the State of Louisiana, declaring that he ran the slave off to prevent his being sold for his debts, and that as he was his wife's negro, he never should be sold for his debts; that he afterwards paid his debts in Georgia, and was in a prosperous condition in Louisiana, and was out of debt; that under these circumstances, whilst in the State of Louisiana, he proposed to his wife that he would exchange one of his own slaves for one that would suit his wife better than the one he had acquired by his marriage with her, and that he would have the bill of sale for the one received in exchange, in the name of his wife, in the place of the one he had always called her slave; that the exchange was accordingly made, and the bill of sale for the slave received in exchange, was made to his wife, the plaintiff in the suit; and this slave so received in exchange, is the same now in controversy.

James S. Avery afterwards moved with his family to this State, bringing the slave, together with his slaves with him, and died in Cherokee County. His widow, the plaintiff in this suit, was appointed administratrix, and Richard Avery, the defendant in the suit, was appointed administrator of his estate. In the first inventory and appraisement returned to the Court, the slave in question was not included with the slaves

belonging to the estate. The plaintiff resigned her adminis-
tration, and Richard Avery proceeded with the settlement of
the estate, and made an additional return of appraisement, in
which the slave sued for was appraised and returned as the
property of the estate of James S. Avery, deceased. The ad-
ministrator subsequently declared that he had become satis-
fied that the slave was the separate property of the widow,
and did not belong to the estate of his intestate; but al-
leged that he could not deliver him up to the widow with-
out an order of Court. The slave was subsequently deliv-
ered up to the plaintiff, under an order of the Probate Court,
but was afterwards taken from her by the defendant, and
suit was brought, and on a writ of sequestration, sued out
at the instance of the plaintiff, the slave was taken into
the custody of the Sheriff, and kept by him, neither of the
parties offering to replevy him. In the defendant's answer,
it is alleged that the slave belonged to the community pro-
perty, and that the estate was insolvent. It was in proof, that,
by the laws of the State of Georgia, the property of the wife at
the time of marriage, becomes the property of the husband.
There was a verdict and judgment for the plaintiff, to reverse
which, a writ of error was taken to this Court.

Among other matters of error assigned, it is alleged that the
evidence does not support the verdict of the jury; and se-
condly, that the verdict does not authorize the judgment ren-
dered by the Court below.

It may be admitted, that, by the laws of Georgia, a wife is
incapable of holding, in her own right, separate property; and
that the property owned by her at the time of marriage, be-
comes the property of the husband; and that so far as relates to
the slave owned by the plaintiff at the time of her marriage,
it was the property of the husband, and he was under no legal
obligation to compensate the wife for such slave; yet after his
removal to the State of Louisiana, where there was no legal
impediment to the wife's holding separate property, it was but
natural that he should carry out the long and continually cher-

ished object of either securing the property that he had received from her at their marriage, or make her a suitable compensation for the same; and, the conveyance he caused to be made to her of the slave sued for, though not supported by a strictly legal consideration, rested upon what was regarded by him as a meritorious moral obligation, to which none but a creditor could oppose any legal objection. In this case, no creditor is resisting the claim of the plaintiff, and although in the answer it is alleged that the estate is insolvent, yet the allegation is not sustained by the evidence. If, however, it had been made so to appear, it is the antecedent creditor, and not the legal representative, that should impeach the convey-ance. In Dancey v. Smith, et al, (4 Tex. R. 411,) an intimation was thrown out that the administrator, for the benefit of creditors, could, perhaps, impeach the consideration of a voluntary conveyance. We are satisfied now, that it can only be done by a creditor. If we are correct in the views we have expressed, the evidence fully sustains the verdict of the jury.

We will next inquire, whether the finding of the jury is sufficient to authorize the judgment of the Court. The verdict of the jury is as follows, i. e. : "We the jury find for the plaintiff, with $80 damages and cost of suit." On this verdict the following judgment was rendered, "it is therefore "considered, adjudged and decreed by the Court, that the plain-"tiff, Mary Avery, have and recover the negro boy John, de-" scribed in her, plaintiff's petition; and it appearing to the " satisfaction of the Court, that the said boy John is now in the " possession of Joseph F. Henry, Sheriff of the County of Chero-" kee, it is ordered by the Court that the said Joseph F. Henry, " Sheriff as aforesaid, deliver to the said Mary Avery the pos--" session of the said boy John, and also to pay over to the " plaintiff the amount of the hire of the said boy John, now in "his possession. It is further ordered and adjudged by the Court, " that the plainliff, Mary Avery, have and recover judgment " against Richard J. Avery, defendant, for the sum of eighty " dollars, less the sum of twenty-four dollars, paid by the Sheriff

" for hire of said boy—the amount of her damage as found by " the jury, and all costs up to the fourth day of the present " Term of this Court, to be taxed, for which execution may is- " sue." The verdict is not as perfect in form as it should have been ; but it has been uniformly decided by this Court, that if by a reference to the record, any uncertainty in the verdict can be explained, it will be sufficient to sustain the appropriate judgment. The language of the verdict " We find for the plaintiff" is substantially a finding the matter in controversy in the suit, in her favor ; and it is only necessary to look to the petition for the ascertainment, with certainty, the meaning of the verdict. It is objected that the jury ought to have found the value of the slave sued for. In many cases it is essential to the interest of the parties, that this should be done. If the property sued for was beyond the reach of the jurisdiction of the Court, at the time of the verdict and judg- ment, nothing but compensation for it could be obtained, and the amount of that compensation should be determined by the jury. This would be necessary to the interest of both plain- tiff and defendant; but where but one particular piece of pro- perty is sued for, and that is sued for in specie, and not in the alternative of damages, if the plaintiff establishes his right to the property, ample and complete justice can only be awarded by a judgment for the restitution of the property so claimed. In this case, the prayer of the petition was for the specific property ; and to secure this object, the plaintiff had procured a sequestration of it, for the purpose of keeping it within the jurisdiction of the Court. Under such circumstances, the ne- cessity of assessing its value, is not perceived. The fact that the property sued for was under the control of the Court, was, doubtless, the reason why the verdict was so found, it being sufficient on which to base a judgment in accordance with the prayer of the petition. The case of Blakely v. Duncan (4 Tex. R. 184) was altogether different from this case. In that the the suit was for several slaves, and the jury assessed their value in the aggregate, and the judgment was in the alterna-

tive, for the negroes, or the value so assessed; and in that case, it did not appear that the slaves were under the control of the Court. The authority of that case is not disturbed by our opinion in this.

There was evidence by deposition returned under a commission taken out by the plaintiff, read in evidence, though objected to by the defendant. The commission and deposition were not returned in conformity to the statute, and the Court erred in overruling the objection made to their being read in evidence; and for this error, the judgment would be reversed, if we believed that the evidence could possibly have had any influence with the jury in their finding; but we believe, that such was its immateriality, that it could not, by any construction that it is reasonable to suppose the jury could have put upon it, had any influence in their finding: hence, we believe that although the Judge erred, that it is no ground for a reversal of the judgment, but that it ought to be affirmed, which is the judgment of the Court.

Judgment affirmed.