DUNLAP *v.* BYERS [1]

| 110 | 109 |
| 123 | 264 |
| 110 | 109 |
| 135 | [2]207 |
| 110 | 109 |
| 143 | [1]97 |
| 110 | 109 |
| 147 | 506 |

1. APPEARANCE—WAIVER—JURISDICTION.
    A defendant who appears, and files his answer to a petition, thereby submits himself to the jurisdiction of the court.

2. FOREIGN COURTS—ACCOUNTING—PARTNERSHIP LANDS.
    Where a court of one State has acquired jurisdiction of a proceeding for the dissolution of a partnership and for a settlement of its affairs, it has authority to determine all of the equities of the case, and may, therefore, adjudicate the rights of the parties as to real estate located in another State. [2]

3. SAME—EFFECT OF DECREE.
    While the decree itself, in such case, will not directly effect the transfer of title, it will bind the consciences of the parties, and can be enforced in the courts of the State where the property is located.

4. PARTNERSHIP—DISSOLUTION—PLEADING.
    A petition for the dissolution of a partnership, which clearly sets up the fact that certain lands in another State were purchased with partnership funds and for partnership purposes, is sufficient to confer jurisdiction upon the court to enter a decree as to such lands, notwithstanding they are not specifically described.

---

[1] Rehearing denied December 9, 1896.

[2] Rights in partnership real estate on dissolution, and the rights of the partners in general in respect to such property, are considered in a note to *Yorks* v. *Tozer*, (Minn.) 28 L. R. A. 86.

5. Foreign Judgment—Conclusiveness—Fraud.
   A judgment of a court of competent jurisdiction in one State is conclusive upon the parties to the action, and their privies, in the courts of another State, and cannot be attacked, even upon the ground of fraud, except by a direct proceeding in the court in which it was rendered.

6. Judgment—Description of Lands—Definiteness.
   A description of lands in a decree is sufficiently definite if they can be located from the *data* given.

7. Partnership—Foreign Decree—Jurisdiction.
   A finding of a court of another State, in a proceeding for an accounting between partners, that certain lands in this State were partnership lands, which had been sold with the consent of the parties, and the proceeds credited to the partnership, is sufficient to authorize a decree as to such lands in an action to enforce in this State the decree of the foreign court.

Appeal from Huron; Beach, J. Submitted May 5, 1896. Decided July 8, 1896.

Bill by Jeptha D. Dunlap and others to enjoin William J. Byers and others from prosecuting certain suits in ejectment. From a decree for complainants, defendants appeal. Affirmed.

*Hanchett & Hanchett*, for complainants.

*Elbridge F. Bacon*, for defendants.

Long, C. J. In 1873 James Dunlap, through whom the complainants claim, and William J. Byers, through whom defendants claim, were engaged in the business of buying and selling lumber in Cincinnati as partners, under the firm name of James Dunlap & Co. In addition to the property they held as partners, they acquired title to an undivided two-thirds of certain lands in Huron county, this State; some of the lands being held in the name of Dunlap alone, and some of them being held in the names of Dunlap and Byers. Afterwards complainant Lucius P. Mason, who owned an undivided one-third of the lands, conveyed such

interest to James Dunlap by two deeds, but as security for advances made by Dunlap & Co. to said Mason, and for moneys owing by him to said firm. It appeared then that the title stood as follows: An undivided two-thirds in James Dunlap and William J. Byers, or, as complainants claim, James Dunlap & Co.; an undivided one-third in James Dunlap, in trust, as security from said Mason; and the legal title in an undivided one-sixth of the lands described in Schedules 1 and 2 of the bill in the name of William J. Byers. While the lands were in this condition, certain parcels were sold, and contracts and deeds made therefor, by James Dunlap, in his own name; and complainants claim that the lands were sold for the firm, with the knowledge and consent of William J. Byers, and the proceeds of such sales credited on the books of the firm.

On December 19, 1885, James Dunlap filed a petition in the superior court of Cincinnati, Ohio, for dissolution of the firm of James Dunlap & Co., praying for an accounting and settlement of the affairs of the partnership, and a settlement of the accounts of the individual partners as between themselves. That petition alleged that James Dunlap and William J. Byers had been engaged as partners, under the firm name of James Dunlap & Co., in buying and selling lumber, their place of business being in Cincinnati, and that in connection with the business of the firm they had acquired a large quantity of lands in the State of Michigan. The petition further alleged that the assets and property of the firm consisted of lumber on hand, and, among other property, the lands in the State of Michigan, and which lands were purchased with the partnership funds for partnership purposes. The plaintiff in the petition further alleged that the amounts to his credit for advances made to the firm, and undrawn profits, were more than equal to the excess of assets over the liabilities of the firm, and claimed that the defendant was indebted to the firm. A receiver was also prayed for. The defendant William J. Byers filed an answer February 4, 1886, sworn to by him personally.

He denied that the credits of the plaintiff in the firm were more than equal to the excess of assets over and above the liabilities, and denied that the Michigan lands were assets of the partnership of James Dunlap & Co.

On December 21, 1885, an order was made by the Cincinnati court, appointing Andrew Jackson receiver of the property of the firm. As appears by that order, it was made with the consent and in the presence of the defendant. December 20, 1886, judgment was rendered by that court, in which it was specifically found that, as a firm, James Dunlap & Co. had purchased for the business of the firm an undivided one-third of certain lands in Huron county, Mich., and that afterwards other undivided interests in similar lands in Huron county, Mich., were purchased by said firm with the funds of the partnership, and for the purposes of its business, and that the conveyances, while in the names of Dunlap and Byers, were taken in trust for the firm. It was also found by that judgment that William J. Byers was indebted to the firm in the sum of $5,815.23, that the firm was indebted to James Dunlap in the sum of $36,683.18, and that the interest of the firm in the lands in Huron county, Mich., was an undivided two-thirds held absolutely, and an undivided one-third held as security for whatever balance might be due from Lucius P. Mason. The judgment further provided that, for the purpose of paying the debts of the firm, an undivided two-thirds of said lands were partnership assets. The dissolution of the partnership was decreed, and the receiver was ordered to sell the interest of Dunlap & Co. in these lands, as well as all the remaining assets of the firm. The sale was made by the receiver on the 6th day of January, 1887, and the lands were bid in by James Dunlap for the sum of $6,500. The sale was duly confirmed by the court, and it was ordered that the receiver set over and convey, by bill of sale and instruments of conveyance, the purchase made by the purchaser at said sale; and William J. Byers was ordered

to quitclaim to James Dunlap, by his deed, the legal title to an undivided one-sixth of the lands in Michigan. It appears by the receiver's report that a part of the lands had been sold by Dunlap, or had been contracted to be sold, prior to the appointment of the receiver; and the decree of the Cincinnati court also ordered James Dunlap and William J. Byers, severally, to quitclaim to such purchasers as soon as the contracts were completed.

William J. Byers died February 21, 1890, without having obeyed the order of the court to quitclaim to James Dunlap the undivided one-sixth of the lands in Huron county, Mich. Since the death of William J. Byers, his heirs, the defendants in the present suit, have commenced suits in ejectment against certain purchasers of certain of these lands, said heirs claiming to be the owners of an undivided one-sixth thereof. The complainants also claim that the heirs of William J. Byers, in 1892, executed to Elbridge F. Bacon a mortgage covering a large number of the lands described in said bill, to secure him for his ser' ... as attorney for such heirs, but that said Bacon was fully informed of the title to the lands, and was therefore not a *bona fide* purchaser. The bill was filed in this cause to restrain the defendants from prosecuting these suits in ejectment, or commencing any further suits for the purpose of asserting claim to the title to any part of said lands, and prays that the defendants may be decreed to have no title or interest in or to any part of the premises described in the bill, and that they be decreed to release and convey to the complainants the undivided one-sixth of such lands, and that the mortgage to said Bacon be decreed to be void. A decree was entered in the court below in accordance with the prayer of the bill.

1. The contention of the defendants is that the decree of the superior court of Cincinnati, directing the lands to be sold, and the sale of such lands by the receiver in pursuance of the decree, were null and void, for want of power

in the court to make such decree, and also that such sale did not of itself divest, or in any manner affect, the title of William J. Byers to the lands in question. It is also contended that these lands, being situate in the State of Michigan, could be sold by the court, or the receiver appointed by the court, only, if at all, in accordance with the laws of this State, and not under the laws of Ohio relating to the sale of lands. While it is not strenuously contended that the court at Cincinnati was not a court of general jurisdiction, yet it is claimed that it never acquired jurisdiction over the person or the subject-matter; while the complainants contend that the superior court of Cincinnati was a court of general jurisdiction, with a limitation upon its territorial jurisdiction within the limits of the city of Cincinnati, and that the record shows that that court had jurisdiction of the parties to that action, as well as of the subject-matter of the suit.

William J. Byers appeared in that suit, and filed an answer to the petition; and the order appointing the receiver expressly states that the order was made with the consent of the defendant, and that the defendant, in open court, expressed his satisfaction and consent to the bond furnished by the receiver. It is well settled that, by appearing and pleading, the defendant submits himself to the jurisdiction of the court. *Hayes* v. *Shattuck*, 21 Cal. 51; *Insurance Co. of North America* v. *Swineford*, 28 Wis. 257; *Evans* v. *Iles*, 7 Ohio St. 233; *Abernathy* v. *Latimore*, 19 Ohio, 286; *Gunn Hardware Co.* v. *Denison*, 83 Mich. 40; *Austin* v. *Burroughs*, 62 Mich. 181. It is also well settled that, when an attorney appears in the case, the presumption is that he has proper authority to appear. *Corbitt* v. *Timmerman*, 95 Mich. 581 (35 Am. St. Rep. 586). The court, therefore, had jurisdiction of the person of William J. Byers in the proceeding for the dissolution of the partnership, and the appointment of a receiver, and the sale of the lands.

The court being one of general jurisdiction, and having acquired jurisdiction over the parties, the only remaining question upon this branch of the case is whether it had jurisdiction of the subject-matter of the suit.   While the distinction between law and equity is, to a great extent, abolished by the Ohio Code, the action brought in that court was, in effect, a bill for an accounting and disso- lution of the partnership, including a prayer for a general settlement of the affairs of the firm, and the appointment of a receiver to take charge of the property for that pur- pose; and by the statute of that State the court is given jurisdiction to try and determine such causes of action, and, in effect, is regarded as having such jurisdiction as an ordinary chancery court of general jurisdiction would have.   The jurisdiction of courts of equity extends to all matters necessary to wind up the affairs of a partnership, including the sale of real estate; and the jurisdiction is not local, even though a part of the assets consists of real property, and although that property may be situate in another county or State.   *Godfrey* v. *White*, 43 Mich. 171; *Graydon* v. *Church*, 7 Mich. 36; *Lindsay* v. *Race*, 103 Mich. 28; *Lyman* v. *Lyman*, 2 Paine, 11; *Griggs* v. *Clark*, 23 Cal. 427; *Jones* v. *Fletcher*, 42 Ark. 422; *Wright* v. *Ward*, 65 Cal. 525; 2 Story, Eq. Jur. §§ 743, 744, 1295–1297; 2 Bates, Partn. § 907.

In *Godfrey* v. *White, supra,* the bill was filed for a partnership accounting.   The partnership owned plaster lands in Kent county, and the suit was brought in the superior court of Grand Rapids, which had no territorial jurisdiction over the plaster lands.   This court held that the lands were to be treated as assets of the firm, and that, for the proper settlement of the affairs of the partnership, the lands should be sold, and the proceeds divided.   It was said by the court in that case:

"Proceedings between partners for an accounting are  always for the principal purpose of reaching a statement of money balances, and a division of assets as personalty.

It may, no doubt, in some cases, turn out that there is
enough pure personalty to settle all balances, without
reference to such lands as are owned by the firm, so that,
if parties choose, they may keep the lands separate; but
this cannot usually be known until the accounts are taken,
and unless the lands are kept out of the accounting al-
together, originally, by general consent, there must be
some difficulty in treating them as distinct at any time.
It would be contrary to all principle to hold a court capa-
ble of maintaining jurisdiction up to the last stage of a
cause, and then incapable of completing its work over any
part of the property in controversy.    Partnership settle-
ments cannot very well be made piecemeal.    The court
that deals with them must determine all of the equities.
The proceeding is, in its essence, a personal, and not a
real, controversy.   *   *   *   The decree, when it reaches
lands, does it incidentally, and its chief purpose is differ-
ent."

In effect, the rule is that, for the purposes of settle-
ment, partnership lands cannot be distinguished from
other assets.    It therefore seems to us to appear conclu-
sively that the superior court of Cincinnati acquired
jurisdiction, not only over the parties, but over the sub-
ject-matter, and had the power to adjudicate the rights
of the parties in all the property belonging to the partner-
ship, although a portion of the same was real estate in the
State of Michigan.    This appears to be the general rule,
and is supported by a large number of authorities cited
in the brief of counsel for the complainants.    *Burnley* v.
*Stevenson*, 24 Ohio St. 474 (15 Am. Rep. 621), is the
leading Ohio case on the subject; and the court there
held that, although the deed made by the commissioner
under the decree of the Kentucky court did not have the
effect to transfer the legal title to the lands, nevertheless,
the decree bound the consciences of those against whom
it was rendered, and that such decree was record evi-
dence of the fact that it became the defendants' duty to
convey the legal title to the plaintiffs.    A similar rule
was laid down in *Wood* v. *Warner*, 15 N. J. Eq. 81,
and the court said:

"The strict primary decree of a court of equity is *in personam*, and not *in rem*, and the authority of this court to deal with contracts in relation to land not within the jurisdiction of the court is fully established."

In *Mitchell* v. *Bunch*, 2 Paige, 606 (22 Am. Dec. 669), the court said:

"Although the property of a defendant is beyond the reach of the court, so that it can neither be sequestered nor taken in execution, the court does not lose its jurisdiction in relation to that property, provided the person of the defendant is within the jurisdiction. * * * It is well settled both in England and in America that courts of equity have jurisdiction to enforce the performance of contracts, where the party proceeded against is within the jurisdiction of the court, regardless of the location of the property."

So the rule seems to be well settled that while the decree itself, in such cases, would not directly effect the transfer of title, the decree of the court would bind the consciences of the parties, and could be enforced by a court within the territory where the property was located. In all jurisdictions it is settled that partnership lands must be regarded by a court of equity as personal property for the purpose of settling the affairs of the partnership; and, where the action is brought for the settlement of the partnership affairs, such court is given jurisdiction over real estate that is outside of the jurisdiction of the court. *Thayer* v. *Lane*, Walk. Ch. 200; *Moran* v. *Palmer*, 13 Mich. 367; *Way* v. *Stebbins*, 47 Mich. 296; *Merritt* v. *Dickey*, 38 Mich. 41; *Godfrey* v. *White*, 43 Mich. 171; *Rammelsberg* v. *Mitchell*, 29 Ohio St. 22; *Page* v. *Thomas*, 43 Ohio St. 38 (54 Am. Rep. 788); *Greene* v. *Greene*, 1 Ohio, 535 (13 Am. Dec. 642); *Shanks* v. *Klein*, 104 U. S. 18.

2. It is contended, however, by the defendants, that the complaint and answer were not broad enough, or specific enough, to furnish a foundation for the finding the court made in the case, in that there was no descrip-

tion of any of the lands claimed to belong to the partnership, and that the general allegation in the complaint that the lands in Michigan were partnership lands, and the denial of that allegation by the defendant, were not sufficient to create an issue as to any particular description of land, and did not authorize the decree that the land in question, or any part of it, was partnership property; and, further, that the court would not have jurisdiction to make a decree as to lands not so described. The petition for dissolution was specific in the statement that a partnership existed. It also set out facts entitling petitioner to a dissolution, and that the lands in Michigan were purchased with partnership funds and for partnership purposes. The answer denied that these lands were assets of the partnership of James Dunlap & Co. The true purpose of the bill was for dissolution of the partnership, and an accounting between the partners. The Cincinnati court found that these lands were partnership assets. In a bill filed for such purpose, it is not necessary to describe the property specifically in the bill or petition. 2 Bates, Partn. § 936; *Little* v. *Snedecor*, 52 Ala. 167; *Groves* v. *Tallman*, 8 Nev. 178; *Copeland* v. *Crane*, 9 Pick. 73.

No proceedings were taken, so far as shown by this record, to set aside the judgment of the Ohio court. The questions which were there adjudicated cannot be reopened here, and the findings of that court are *res adjudicata*. *Wilcox* v. *Kassick*, 2 Mich. 165; *Burnley* v. *Stevenson*, 24 Ohio St. 474 (15 Am. Rep. 621).

3. Defendants further contend that the decree of the Ohio court was obtained by fraud, and that the sale under it was fraudulently conducted. There is no allegation in defendants' answer that points out what acts of fraud are complained of. *Wilson* v. *Eggleston*, 27 Mich. 257; *Reed* v. *Jourdan*, 109 Mich. 128. But, even if the answer were sufficient to admit such proof, the defendants are not in position, in this collateral proceeding, to attack

the judgment of the Ohio court on that ground. While a third person, without notice (at the time he acquired interests in the property) of the fraudulent character of the judgment, may attack the judgment for fraud in a collateral proceeding, it is held that parties and their privies can obtain relief from a fraudulent decree only in a direct proceeding for that purpose, and in the court where the original proceeding was had, either by writ of error, or by some other means to set the judgment aside. *Eureka Iron & Steel Works* v. *Bresnahan*, 66 Mich. 495; 2 Freem. Judgm. § 334.

4. It is also contended that the lands are insufficiently described in the decree, for the reason that no State or county, town or range, is designated. We think the descriptions definite enough to enable the lands to be located. The numbers of the section, town, and range are given. See *Mee* v. *Benedict*, 98 Mich. 260 (39 Am. St. Rep. 543).

5. It is also claimed that no decree was made by the Ohio court as to certain descriptions of the lands in controversy here. According to the finding of the Ohio court, these lands were partnership lands, but the title stood in James Dunlap; that he sold them, giving deeds of warranty, to the knowledge of Mr. Byers, and the proceeds were credited to the partnership. The parties purchasing under such circumstances could maintain a bill in chancery to perfect their title. The court was not in error in including these lands in the decree, as well as the other lands referred to where contracts had been made and not completed.

The other points raised by the brief of defendants' counsel must be overruled, as we think, upon this record, it would be inequitable and unjust to permit the heirs of William J. Byers to claim any interest in these lands, especially in view of the fact that William J. Byers, as well as the company itself, was indebted to James Dunlap, as found by the Cincinnati court, and

which sum has not been canceled even by the sale of the lands in controversy.

The decree of the court below must be affirmed.

The other Justices concurred.