RICHARD R. MEENTS, Trustee, et al., Appellants, v. WILLIAM H. COMSTOCK et al., Appellees.

No. 45287.

March 11, 1941.

Rehearing Denied August 6, 1941.

Edson & Edson, Barr & Barr, and Robert F. Goodyear, for appellants.

Whitney, Whitney & Stern, for George K. Comstock and Aurine K. Comstock, appellees, and Lizzie Neuman.

Mack & Mack and Guy E. Mack, for William H. Comstock, Howard C. Comstock, Myron D. Comstock, and Carrie A. Redmond, defendants.

STIGER, J.—The real estate involved in this appeal consists of 572 acres in Buena Vista county, Iowa. A preliminary statement of the history of the trust is essential to a complete understanding of the issues in the lower court.

Charles H. Comstock, a resident of Illinois, died testate in 1907 leaving a widow, who passed away in 1916, three sons and three daughters. The will devised and bequeathed all of the property of the testator to the sons, Clinton, William and George Comstock, in equal shares, subject to a charge on all the property in favor of the three daughters, Alice Clifton, Carrie Redmond and Mae R. Zumwalt. The estate consisted of 572 acres of land in Buena Vista county, Iowa, 580 acres in Iroquois county, Illinois, and a grain elevator and other property in Ashkum, Illinois, the home of the testator. The will provided for the appraisement of all the real estate and the appraised value plus the personal property remaining after the payment of the debts and expenses of administration was denominated by the testator "the net amount of my estate." The will bequeathed to each of the daughters during her life and directed the sons to pay a sum of money equal to one and one-half percent of one sixth of the net amount of the estate payable semiannually after the final discharge of the executors as long as they lived. Upon

the death of a daughter, such payments were to be made to her children until they became 21 years of age at which time they would be entitled to a sum equal to one sixth of the net estate. The first payment to the daughters became due in 1914. The will was admitted to probate in Iowa as a foreign will.

After the death of Mr. Comstock the brothers operated the farms and other property inherited from their father as a partnership known as C. H. Comstock Company. Clinton and William resided in Illinois and George Comstock resided in Buena Vista county, Iowa. Clinton Comstock was committed to the hospital for the insane at Cherokee, Iowa, in 1925 and died in 1937. His wife, Julia Comstock, was appointed conservatrix of his estate by an Illinois court and she, as conservatrix, William and George Comstock continued to carry on the partnership.

In September 1930, the partnership being heavily indebted, George Comstock went to Illinois and employed an attorney to prepare a trust agreement relative to the partnership property. The conservatrix was authorized to sign the agreement by the Illinois court which appointed her.

The trust instrument, which was signed by George and William Comstock and the conservatrix, referred to the will, the charge on partnership property in favor of the sisters and their heirs and stated that a large amount of indebtedness had been created in connection with the operation of the real estate in Illinois and Iowa and the elevator business; that creditors had obtained judgments against the brothers and others were threatening suits; that some of the property had been levied upon and that unless steps were taken immediately to convey the partnership property to a trustee "their entire holdings may be lost to them and this valuable property sold at sales resulting in great loss to them and their creditors. Said first parties, (George and William Comstock and Conservatrix) therefore, for and in consideration of the mutual benefits to be received by each of them from the handling of said property by said trustee, and the conveyance by each to said trustee, hereby sell, assign, transfer, convey, set over and deliver to Richard R. Meents, as trustee all of the lands devised to them under the said will of Charles H. Comstock, deceased, and all other lands" etc.

The instrument authorized the trustee, among other powers, to operate all the lands and to sell, rent, lease or mortgage them in such manner that he might deem for the best interest of the trust estate and directed him (1) to pay the charges created by the will in favor of the daughters and (2) the creditors, the remainder to be paid to the owners or partners. It directed the trustee to make application to the circuit court of Iroquois county for confirmation of the trust and his appointment as trustee, which court should have jurisdiction of the trust, and empowered him "to proceed in any court in Illinois or in the States of Iowa or Indiana, if such be proper and necessary in order to carry out the provisions of this trust."

The agreement provided that the trust should not continue longer than ten years and should be ended as soon as the purposes and the welfare of the beneficiaries would permit. The appointment of the trustee and the trust agreement were confirmed and approved by the Illinois circuit court on November 15, 1930.

The purpose of the trust was to prevent bankruptcy proceedings and to have the trustee hold and manage the property until the price thereof increased to a degree that would give the brothers an equity in the property after the payment of the claims.

On February 21, 1939, a supplemental decree was entered in the trusteeship pending in the Illinois court pursuant to a supplemental complaint filed by the trustee which directed him to sell the trust property, including the Iowa real estate, for the purpose of carrying out the trust agreement and liquidating the partnership known as the C. H. Comstock Company. This decree of 35 pages thoroughly reviewed the provisions of the will and the history of the trust, found that the "net amount of the estate" of Charles H. Comstock was $155,303.41, one sixth thereof being $25,883.90; that the amount of payments due the daughters was over $8,000; that there was a large amount of indebtedness and many claims had been filed against the partners in the trust. It found that the heirs of the sisters and creditors were demanding payment of their claims and the sale of the property; that the trust agreement expired in 1940; that it was necessary to liquidate the trust and pay all of the

creditors; that if the creditors and the daughters and their heirs "were to attempt to enforce the payments of the amounts due them by judgment, levies, foreclosures, or otherwise, the interests of the said three sons of said Charles H. Comstock would be completely exhausted and that by reason thereof, it is necessary for the plaintiff, Richard R. Meents, as Trustee, to proceed with the orderly liquidation of said estate in order that William C. Clifton and the two sisters, may be paid the amounts due them and something preserved for said creditors and for the said brothers."

The decree ordered that the real estate be sold free of the charges thereon created by the will and directed the trustee to institute proceedings in the district court of Iowa in and for Buena Vista county for the sale of the Iowa real estate.

The trustee then brought this suit in equity for authority to sell the Iowa real estate and for the distribution of the proceeds under the provisions of the will, the trust agreement and decree of the Illinois court, all of which instruments were made a part of the petition.

The plaintiff William Clifton is the sole heir of the testator, Alice Clifton, and seeks the same relief prayed for by the trustee. Clinton Comstock died in 1937. The defendants material to this appeal are the surviving sons of the testator, the heirs of Clinton Comstock and the surviving daughters and their children. George Comstock was the only defendant who resisted the petition to sell the real estate and is the sole appellee.

I. The trial court, referring to the decree of the Illinois court entered on February 21, 1939, said:

"The Court finds that the Illinois Court had no jurisdiction of the real estate situated in Iowa, nor the person of the defendant; and the court finds that in so far as said decree attempts to adjudicate the question of the title to the land in Iowa, that the same is void and not entitled to full faith and credit, as the laws of the state of Iowa alone cover the alienation and descent of the title to the real estate involved in this proceeding."

This court is of the opinion the finding that the decree of the Illinois court was void and not entitled to full faith and credit is erroneous.

It is too well settled to require citation of authorities that the courts of a state cannot create an interest in real estate situated in another state; nor can they adjudicate the title or control the devolution of such real estate; that is, the decree or judgment in one state cannot act directly on land in another state. However, it is equally well settled that in cases of trust a court of equity, if it has jurisdiction of the proper litigants, may enforce the trust by a decree in personam directing the conveyance of lands situated in another state. This rule is applicable to the instant case.

The leading case on this subject is Massie v. Watts, 6 Cranch 148, 160, 3 L. Ed. 181, 186, in which case Chief Justice Marshall states:

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion, that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.

"The inquiry, therefore, will be, whether this be an unmixed question of title, or a case of fraud, trust or contract."

In MacGregor v. MacGregor, 9 Iowa 65, 78, this court, in recognizing the jurisdiction of the New York court to declare and enforce a trust as to lands in Iowa, stated:

"The jurisdiction is sustained upon the principle that in all cases in equity the primary decree is in *personam* and not *in rem,* and that in these cases peculiarly the courts having authority to act upon the person may make decrees not binding the land itself, but the conscience of the party in regard to the land, and compel him to perform his contract, execute his trust, or answer for the fraud according to conscience and good faith."

In Matson v. Matson, 186 Iowa 607, 617, 173 N. W. 127, 131, the opinion, in considering the jurisdiction of courts over real estate, said:

"The first [proposition] is that real property is subject to the exclusive jurisdiction of the state in which it is located.

We do not understand appellee to controvert this proposition, nor do we intend to depart from that general rule; but appellants concede that there are at least two exceptions to the rule. One is that a court of equity, having personal jurisdiction of the parties, may, in actions which are otherwise cognizable in equity, and which arise out of fraud or of trust or of contract, grant a decree requiring a conveyance of land in another state; and on this they cite Massie v. Watts, 6 Cranch 148 (3 L. Ed. 181); MacGregor v. MacGregor, 9 Iowa 65; Gilliland v. Inabnit, 92 Iowa 46; Blackman v. Wright, 96 Iowa 541; Sullivan v. Kenney, 148 Iowa 361, 387; Lindsley v. Union Silver Star Min. Co., 26 Wash. 301 (66 Pac. 382); Proctor v. Proctor (Note), 69 L. R. A. 673.''

In Byrne v. Jones, 8 Cir., 159 F. 321, 328, the opinion states:

''But a court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master or otherwise by its decree in suits to execute trusts, to undo frauds, and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the persons of the parties interested therein, for the reason that equity acts through the person.''

For other authorities, see Gilliland v. Inabnit, 92 Iowa 46, 60 N. W. 211; Stone v. Fowlkes, 29 App. D. C. 379; Smith v. Davis, 90 Cal. 25, 27 P. 26, 25 Am. St. Rep. 92; Fall v. Eastin, 215 U. S. 1, 30 S. Ct. 3, 54 L. Ed. 65, 23 L. R. A., N. S., 924, 17 Ann. Cas. 853; Baskin v. Montedonico, 26 F. Supp. 894; Perry on Trusts, 7th Ed., Vol. I., sections 71, 72; 65 C. J. 1010; 21 C. J. 151.

The decree of the Illinois court did not operate as a conveyance of or adjudicate the title to the Iowa land. The trustee received title to the land from the persons having the title encumbered by the rights therein of partnership creditors and the charge in favor of the sisters. The trust agreement was the method adopted by the owners, with the consent of the creditors, for the orderly, efficient liquidation of the partnership. The circuit court had jurisdiction of the trust and the trustee, who represented the creditors and the beneficiaries under the will, all of whom relied on the trust agreement in deferring action

against the partnership property. The trustee did not receive his authority to sell the land from the court alone for he was expressly granted the power by the trust contract to sell it for the purpose of gradually winding up the partnership affairs. The decree, recognizing the time for final liquidation had arrived, directed the trustee to perform his duty and sell the real estate pursuant to the terms of the trust. The Iowa real estate is unquestionably subject to the partnership debts and the charge thereon made by the will. We perceive no reason why the claimants, whose rights have been established by the Illinois court, should be compelled to come to Iowa and reestablish their claims in the real estate in the Iowa court. There are no Iowa creditors claiming any rights in this Iowa real estate.

Our conclusion is the Illinois court had jurisdiction to direct its trustee to perform the trust agreement by instituting a suit in the Iowa court for the sale of the Iowa land, and the lower court should have given full faith and credit to the decree and ordered the sale of the 572 acres as prayed in the petition.

II. We are of the opinion the lower court erred in finding that the defendant George Comstock signed the trust agreement on condition that Julia Comstock, conservatrix of Clinton Comstock, would secure her appointment as guardian in the proper court in Iowa and authorization by such court to sign the contract; that the contract was not to be binding on Comstock until she signed it pursuant to authority from the Iowa court; that as the conservatrix did not comply with this provision of the trust agreement it never became a valid and binding contract.

The material provisions of the agreement on this issue read:

"As to any grant or power of conveyance herein contained and granted on the part of Julia A. Comstock, as Conservatrix of Clinton C. Comstock, it is understood and intended that the necessary legal proceedings required by law for the sale and conveyance of the real estate of any person legally adjudged incompetent, shall be taken to authorize any sale or conveyance to be made in so far as any such proceedings shall be necessary; that in case of a sale of any of said property requiring a proceeding in court, that such proceeding or proceedings shall be carried on as by law required."

It is apparent these provisions refer only to a future sale of the property under the agreement and was not a condition precedent to a binding contract. Furthermore, defendant accepted the benefits of the trust and attended hearings had thereon in the Illinois court throughout the nine-year period of its administration by the trustee and is now estopped from denying the existence of the trust agreement.

III. The trial court held the conveyance of the Iowa real estate in the trust agreement by the conservatrix did not convey the interest of her ward, Clinton Comstock, therein, and his partnership interest did not become a part of and subject to the trust agreement. The conservatrix was not appointed guardian by an Iowa court and it may be conceded that her conveyance of the Iowa real estate by the trust agreement under the authority of the Illinois court was without force or effect. However, under all the circumstances, we are of the opinion that the interest of Clinton Comstock in the Iowa real estate (now owned by George Comstock, defendant) is subject to the trust and claims of the partnership creditors and the daughters and should be sold by the trustee in this proceeding for their benefit.

Before answering in this suit, George Comstock filed a cross-petition against his brother, William Comstock, and the sole heirs of Clinton Comstock, Myron D. and Howard Comstock, asking that the title to the 572 acres be quieted in him. The grounds for such relief were that the partnership, C. H. Comstock Company, composed of the three brothers, owned this real estate; that the company had an audit made of its books from 1907 to June 30, 1928, which showed that at that time—June 30, 1928—William and Clinton had made larger withdrawals from the partnership account than cross-petitioner; that the amount of his lien on the property, because of the excessive withdrawals, was more than the market value of the equity of the company in the land and therefore title should be quieted in cross-petitioner. The decree was entered as prayed. It thus appears that in 1928, and prior to the execution of the trust agreement in 1930, George Comstock was the beneficial owner of the Iowa real estate, including the interest therein of Clinton Comstock, subject to the rights of the sisters and creditors of the partnership. When George Comstock, William Comstock and the conserva-

trix conveyed to the trustee by the trust contract all the lands devised to the brothers by the will of Charles Comstock and other partnership lands, the conveyance included George's beneficial ownership of the interest of Clinton Comstock in the real estate. As it was adjudicated by the decree, from which there was no appeal, that all of the beneficial interest of Clinton Comstock in the Iowa real estate was owned by George Comstock prior to the time the trust agreement was executed in 1930, it cannot be said that, because Clinton Comstock retained the naked legal title to his interest in the partnership realty, the Iowa real estate did not become a part of and subject to the trust agreement in which George Comstock, the conservatrix and William Comstock conveyed all of their interest in the partnership realty to the trustee for the benefit of partnership creditors and the beneficiaries under the will. As heretofore stated, George Comstock was a party to the Illinois suit which directed the sale of the Iowa real estate pursuant to the terms of the trust.

Our conclusion on this issue is that the interest of Clinton Comstock in the Iowa real estate, now owned by defendant, is subject to the provisions of the trust agreement and that the trustee may sell this interest in the proceeding below pursuant to the trust and the decree of the Illinois court authorizing the sale. .

IV. The record does not sustain the finding of the trial court that there was a complete failure of proof by plaintiffs that there was a valid indebtedness existing in Illinois and therefore the petition for the sale of the real estate must be denied. The record shows the charge on the real estate in favor of the daughters and the debts of the brothers are probably equal to and might exceed the value of all the trust property. The amount of the indebtedness is not material as under the provisions of the contract the partnership must be wound up and the trust closed.

Appellees filed a motion to dismiss the appeal upon the ground that no notice of appeal was served on Carrie Redmond, Mae R. Zumwalt, daughters of testator, and their defendant children or upon Lizzie Neuman and Sam Johnson.

It is apparent from the record that the interests of the de-

fendant daughters of testator and their children are not adverse to plaintiff trustee who represents them and that they will not be adversely affected by a reversal. The decree entered below was in fact prejudicial to said defendants. The defendants Lizzie Neuman and Sam Johnson did not file answers or otherwise appear in the proceeding below and no relief was asked for or granted as to these defendants. It follows they cannot be prejudicially affected by a reversal.

Reversed and remanded for a decree in harmony with this opinion.—Reversed and remanded.

HALE, C. J., and BLISS, MILLER, and WENNERSTRUM, JJ., concur.