[L. A. No. 24090. In Bank. Nov. 5, 1957.]

ALICE F. ROZAN, Respondent, v. MAXWELL M. ROZAN, Appellant.

Maxwell M. Rozan, in pro. per., for Appellant.

Gustave L. Goldstein for Respondent.

TRAYNOR, J.—Plaintiff brought this action against her husband, Maxwell M. Rozan, for divorce, support, custody of their minor child, and division of their community property. Certain other persons involved in transactions with Rozan were named defendants. Appearances were made on behalf of defendants Rozan, Lee McCormick, and Bernard Siegel. Edward Rosen and M. W. Truss appeared *pro se*.

The trial court granted plaintiff an interlocutory judgment of divorce on the ground of extreme cruelty, awarded her the custody of the minor child, ordered defendant to pay $75 per month for child support, $250 per month for plaintiff's support, and $12,500 for attorney's fees. The court adjudged that the parties became domiciled in California in May 1948 and in any event not later than July 1948 and that the property thereafter acquired was community property and awarded plaintiff 65 per cent thereof. Defendant appeals.

Although defendant "does not challenge the lower Court for granting the divorce" and "is content to have the divorce granted to Respondent, so as to terminate the instant marriage" he contends that there was not sufficient evidence that he was guilty of cruelty to justify awarding plaintiff more than 50 per cent of the property, that certain oil properties outside of California adjudged to be community property were his separate property, and that the court erred in finding that there was no consideration for defendant's transfer of certain property, that certain transfers were made to defeat plaintiff's interest therein, that the parties became domiciled in California and in awarding plaintiff attorney's fees, alimony, and child support.

The reporter's transcript of 886 pages contains conflicting evidence with respect to all matters questioned by defendant, and it cannot reasonably be doubted that it contains substantial evidence in support of the findings and judgment. No useful purpose would be served in recounting the many incidents that support the court's finding of extreme cruelty. The amounts awarded for attorney's fees, alimony, and child support were not unreasonable under the facts as found by the trial court. Since defendant is primarily concerned with the division of property, we shall review briefly the evidence that supports that division.

The first finding essential to the division of the property is that plaintiff and defendant "established their residence and domicile in California in May, 1948, and in any event not later than July, 1948" and "that ever since they have

been and still are residents of and domiciled in the State of California." ██ A determination of the domicile is essential, for marital interests in movables acquired during coverture are governed by the law of the domicile at the time of their acquisition. (*Schecter v. Superior Court, ante,* pp. 3, 10-11 [314 P.2d 10]; *Estate of Bruggemeyer,* 115 Cal. App. 525, 538 [2 P.2d 534]; *Justis v. Atchison, T. & S. F. Ry. Co.,* 12 Cal.App. 639, 644 [108 P. 328]; Civ. Code, § 164; see Rest., Conflict of Laws, § 290; Stumberg, Conflict of Laws [2d ed.] p. 313; Goodrich, Conflict of Laws [3d ed.] p. 385.) ██ Moreover, the interests of the spouses in movables do not change even though the movables are taken into another state or are used to purchase land in another state. (*Tomaier v. Tomaier,* 23 Cal.2d 754, 759 [146 P.2d 905]; *Depas v. Mayo,* 11 Mo. 314, 319 [49 Am.Dec. 88]; see also *Beard's Ex'r v. Basye,* 46 Ky. (7 B. Mon.) 133, 146; *Avery v. Avery,* 12 Tex. 54 [62 Am.Dec. 513]; Rest., Conflict of Laws, §§ 290, 291; Stumberg, Conflict of Laws [2d ed.] p. 314; Goodrich, Conflict of Laws [3d ed.] p. 378.)

Defendant contends that there is no evidence that he was ever in California before July of 1948 and that sending his pregnant wife to California to make a home there in May of 1948 did not establish his domicile in California. (See *Sheehan v. Scott,* 145 Cal. 684, 690 [79 P. 350]; 17 Pitts.L.Rev. 97.) It is unnecessary to determine whether defendant was domiciled in this state prior to July 1948, for all the property involved was acquired subsequent to that date.

██ The record shows that plaintiff and defendant resided in Glenwood Springs, Colorado, until May 19, 1948. Plaintiff testified that in January of that year they learned that plaintiff was pregnant. They had a letter from defendant's sister-in-law inviting plaintiff and defendant to live with her and stating that she would take care of plaintiff and give her a good home until defendant made a fresh start in life. Plaintiff and defendant agreed that they would make their home wherever plaintiff wished and they decided that she should go to defendant's sister-in-law's place in Los Angeles. She left for Los Angeles and that day or the next, defendant left for Canada. In July 1948 defendant came to Los Angeles, and he and plaintiff went house-hunting and took up their residence in Canoga Park, where they lived from August 1948 until December 1949. Defendant lived there when he was in town until December 1949, when they rented a furnished house at San Gabriel with an option to buy. They bought the

house and thereafter lived there. Defendant was interested in oil lands and traveled extensively. In a deposition he stated "I moved out here [California] when Mrs. Rozan came out here to give birth to our son"; that he had voted in California "By absentee ballot at the last presidential election [1952]" and had considered this his residence since 1948. The foregoing evidence amply supports the trial court's finding of domicile not later than July, 1948.

The next essential finding on which the division of property depends is "that after plaintiff and defendant became domiciled in California, as a result of defendant's work, efforts, ability, and skills as an oil broker and operator, they acquired some money and property but that in the latter part of 1948 and in any event before May 1949 they lost everything so acquired by them from the latter part of 1948 until May 1949 and had none thereof and that sometime between December 1948 and May 1949, Rozan was obliged to apply to the Veterans' Administration for a pension in order to furnish plaintiff and Rozan their necessary living expenses and necessities of life." This finding is substantiated by the testimony of plaintiff as well as that of defendant, who stated "At that time I was hard pressed. I had properties but no income."

The last finding on which the division of property depends is that the North Dakota properties "were acquired with community property and community property money." It is undisputed that these properties were acquired after 1949, at which time plaintiff and defendant had no funds. Defendant's testimony supports the finding that these properties were purchased with movables, for he testified that he made a lot of money on his Canadian ventures as an oil operator and that it was with this money that the North Dakota properties were purchased. Both plaintiff's and defendant's testimony supports the finding that at the time of trial they still owned everything that they owned when they left Colorado in May of 1948, except two parcels that defendant transferred to a trust for his son and an interest that plaintiff sold. Plaintiff accounted for the expenditure of the proceeds received from the sale of that interest. It thus appears that the purchase money for the North Dakota properties was acquired by the efforts and skill of defendant as an oil operator subsequent to the establishment of the California domicile and was therefore community property. (*Schecter* v. *Superior Court, supra, ante,* pp. 3, 10-11.) More-

over there is a presumption that in the absence of evidence of gift, bequest, devise or descent, all property acquired by the husband after marriage is community property. (Civ. Code, §§ 163, 164; *Estate of Duncan,* 9 Cal.2d 207, 217 [70 P.2d 174]; *Estate of Jolly,* 196 Cal. 547, 553 [238 P. 353]; *Nilson* v. *Sarment,* 153 Cal. 524, 527 [96 P. 315, 126 Am.St.Rep. 91]; *Wilson* v. *Wilson,* 76 Cal.App.2d 119, 125-126 [172 P.2d 568].) ■ There is no evidence that the purchase money was acquired by gift, bequest, devise, or descent. There is, therefore, substantial evidence to sustain the trial court's finding that the North Dakota properties were purchased with community property funds. It follows that the trial court could properly declare that the plaintiff was entitled to 65 per cent of such property as against the husband, for it is within the sound discretion of the trial court to assign the community property to the respective parties in such proportions as it deems just when a divorce is granted on the ground of extreme cruelty (Civ. Code, § 146).

■ After acquiring the real property in North Dakota, defendant divested himself of title thereto by means of various conveyances, and title was eventually put in the name of Eugene Rosen, defendant's nephew, either individually or as trustee of a purported trust for the minor child. The defendant contends that the trial court erred in holding that these were not actual transactions, but were without consideration and fraudulent as to the plaintiff. The trial court found that the purported transfers took place on or about the dates of recordation and not on the dates in the deeds. This finding is supported by the evidence that many of the dates on the notarized deeds were dates that other evidence showed could not possibly be the dates on which the deeds were notarized. Thus, there was evidence that defendant was not even in North Dakota when some of the purported notarized dating took place. Most of the notarizing was done by the same notary, McCormick's secretary. McCormick was a party to certain of the North Dakota transactions that the court declared were fraudulent. Although McCormick was a codefendant in this action, he did not appeal.

■ Other evidence also indicates that these transactions were not bona fide. In the Kvam transaction defendant purported to trade the Kvam property and the "five Wanberg acres" to McCormick in exchange for the Tripp County lease. The deal was purportedly closed at a time when McCormick did not own the Tripp County lease that he was

giving in trade. At the same time, or within a day or two, the Kvam property was transferred to Eugene Rosen, nephew of the defendant, and McCormick accepted as payment Rosen's unsecured note for some $49,000. He admitted that he knew nothing about Rosen's financial status and stated that Rosen had as much as told him that "he didn't have any money." McCormick had never made a title search on the Kvam property, and defendant had never made a title search on the Tripp County land, which was claimed to be worth $53,500. The testimony of defendant and McCormick with respect to these transactions was vague and evasive and differed as to how and where the transactions were carried out.

It further appears that McCormick accepted the Rud lease, owned by defendant, in payment for Rosen's $49,000 note, although the value of the Rud lease did not exceed $880. Much of the land was transferred to Eugene Rosen as trustee of a purported trust for the minor child, and admittedly there was no consideration therefor. All of these transfers were without the consent of the plaintiff.

It is significant that since plaintiff began this action, defendant divested himself of title to all but one parcel of his land in North Dakota, some 18 parcels, and that each parcel was placed in the name of his nephew, Eugene Rosen, either individually or as a purported trustee. In his deposition taken at Silver Springs, Maryland, except for giving his name and address and identifying certain documents, Eugene Rosen refused to answer all questions on the ground that his answers might tend to incriminate him. The only property that defendant purportedly owns is the Tripp County lease, which the court found was transferred from McCormick to defendant to simulate consideration for the apparently valuable Kvam property and the five Wanberg acres. Both of these latter parcels were transferred the same day or within a day or two to Eugene Rosen. It is also significant that although defendant claims that some of the property transferred to his nephew individually was for a consideration, he cannot account for the consideration. Thus, there is abundant evidence to support the trial court's finding that these transactions were fraudulent as to plaintiff.

As to the $2,500 note of M. W. Truss that defendant purportedly sold to McCormick, substantial evidence supports the trial court's finding that it was only a "wash" transaction for the purpose of depriving plaintiff of her interest in the note and the proceeds thereof and that the proceeds

collected by the receiver in this suit are community property. Furthermore, such a finding, even if erroneous, was detrimental to McCormick and not to defendant, and McCormick has not appealed.

Defendant contends finally that the judgment directly affects the title to land in another state and therefore exceeded the court's jurisdiction. ▮ A court of one state cannot directly affect or determine the title to land in another. (*Fall* v. *Eastin,* 215 U.S. 1, 11 [30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A. N.S. 924]; *Carpenter* v. *Strange,* 141 U.S. 87, 106 [11 S.Ct. 960, 35 L.Ed. 640]; *Taylor* v. *Taylor,* 192 Cal. 71, 76 [218 P. 756, 51 A.L.R. 1074]; *Melvin* v. *Carl,* 118 Cal.App. 249, 251 [4 P.2d 954]; *Redwood Inv. Co.* v. *Exley,* 64 Cal.App. 455, 458 [221 P. 973]; *Launer* v. *Griffen,* 60 Cal.App.2d 659, 662 [141 P.2d 236].) ▮ It is well settled, however, that a court, with the parties before it, can compel the execution of a conveyance in the form required by the law of the situs and that such a conveyance will be recognized there. (*Muller* v. *Dows,* 94 U.S. 444, 449-450 [24 L.Ed. 207]; *Watkins* v. *Holman,* 16 Pet. (U.S.) 25, 57 [10 L.Ed. 873]; *Corbett* v. *Nutt,* 10 Wall. (U.S.) 464, 475 [19 L.Ed. 976]; *Massie* v. *Watts,* 6 Cranch. (U.S.) 148, 160 [3 L.Ed. 181]; *Cole* v. *Manning,* 79 Cal.App. 55, 63 [248 P. 1065]; *Tully* v. *Bailey,* 46 Cal.App. 2d 195, 200 [115 P.2d 542]; *Deschenes* v. *Tallman,* 248 N.Y. 33 [161 N.E. 321, 322]; see Rest., Conflict of Laws, § 97, comment a; Currie, *Full Faith and Credit to Foreign Land Decrees,* 21 U. of Chi.L.Rev. 620, 628-629.) If the court has entered a decree of specific performance, but the conveyance has not been executed, the majority of states, including California, will give effect to the decree. (*Spalding* v. *Spalding,* 75 Cal.App. 569, 580 [243 P. 445]; *Redwood Inv. Co.* v. *Exley,* 64 Cal.App. 455, 458 [221 P. 973]; *Idaho Gold Min. Co.* v. *Winchell,* (Idaho) 59 P. 533, 535 [96 Am.St.Rep. 290]; *Matson* v. *Matson,* 186 Iowa 607, 622 [173 N.W. 127]; *Meents* v. *Comstock,* 230 Iowa 63, 69 [296 N.W. 721]; *Dunlap* v. *Byers,* 110 Mich. 109, 117 [67 N.W. 1067]; *Deschenes* v. *Tallman,* 248 N.Y. 33 [161 N.E. 321, 322]; *Roblin* v. *Long,* 60 How.Pr. (N.Y.) 200, 205; *Burnley* v. *Stevenson,* 24 Ohio St. 474, 479-480 [15 Am.Rep. 621]; *Mallette* v. *Scheerer,* 164 Wis. 415, 419 [160 N.W. 182]; see Stumberg, Conflict of Laws [2d ed.] p. 125.) Thus in *Redwood Inv. Co.* v. *Exley,* 64 Cal.App. 455, 459 [221 P. 973], the court stated with reference to a Kentucky decree of specific performance to land in California: "It may be pleaded as a basis or cause of action

or defense in the courts of the state where the land is situated, and is entitled in such a court to the force and effect of record evidence of the equities therein determined unless it be impeached for fraud.'' There is no sound reason for denying a decree of a court of equity the same full faith and credit accorded any other kind of judgment. ''Without exception, the courts recognize the validity of a deed executed under the compulsion of a foreign decree. But if the decree did not deal rightfully and constitutionally with the title to the land it would be voidable for duress. Recognition of the deed necessarily involves acceptance of the decree. Whatever intrusion on the state's exclusive control is implied in the recognition of the decree is accomplished through the recognition of the deed. A policy so easily evaded, so dependent on the success of the defendant in eluding the enforcement process of the foreign court, is a formal, lifeless thing, and the truth must be that foreign judicial proceedings of this type pose no real threat to the legitimate interest of the situs state.'' (Currie, *supra*, 21 U. of Chi.L.Rev. 620, 628-629.) Thus in the majority of states, such decrees are given effect as a res judicata declaration of the rights and equities of the parties. (Cases *supra*; *Mills* v. *Mills*, 147 Cal.App.2d 107, 116-119 [305 P.2d 61] ; *Hicks* v. *Corbett*, 130 Cal.App.2d 87, 90 [278 P.2d 77] ; *Dodd* v. *Bell*, 180 Ga. 313 [178 S.E. 663, 664] ; *Dobson* v. *Pearce*, 12 N.Y. 156, 166 [62 Am.Dec. 152] ; *Baughan* v. *Goodwin*, (Tex.Civ.App.) 162 S.W.2d 732, 736 ; *Hall* v. *Jones*, (Tex.Civ.App.) 54 S.W.2d 835, 836 ; see Barbour, *The Extra-Territorial Effect of the Equitable Decree,* 17 Mich.L. Rev. 527, 532 ; Currie, *supra*, 21 U. of Chi.L.Rev. 620, 629, 678-679 ; Lorenzen, *Application of Full Faith and Credit Clause to Equitable Decrees for the Conveyance of Foreign Land,* 34 Yale L.J. 591, 612.) *Fall* v. *Eastin,* 215 U.S. 1 [30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A.N.S. 924], on which defendant relies did not hold otherwise. In that case the Washington decree directly affected title to land in Nebraska. A commissioner of the Washington court had executed a deed to that land and Mrs. Fall attempted to use this deed as a muniment of title in her action to quiet title against a grantee of the husband.

 In the light of the foregoing principles the judgment in the present case is res judicata and entitled to full faith and credit in North Dakota to the extent that it determines the rights and equities of the parties with respect to the land in question. An action on that judgment in North Dakota, however, is necessary to effect any change in the title to the

land there. Thus, the judgment must be affirmed to the extent that it declares the rights of the parties before the court and modified to the extent that it purports to affect the title to the land.

Neither Eugene Rosen, who holds record title, nor the minor child, who is the beneficiary of the purported trust, were parties to this action and the judgment is therefore not binding on them. Defendant and McCormick are bound, however, for they were parties to the action and appeared therein.

In several respects the judgment purports to affect title to the land and must therefore be modified. Thus, paragraph 11 declares that the Rollins' deed purporting to convey the Kvam property to McCormick is a nullity, that McCormick never acquired title, and that therefore Rosen never acquired title. Accordingly, the judgment is modified by striking paragraph 11 therefrom.

Paragraph 21 of the judgment awards 65 per cent of the North Dakota properties and the past, present, and future rents, issues and profits therefrom to plaintiff as her sole and separate property and awards 35 per cent thereof to Rozan subject to a lien for alimony, child support, and attorney's fees. This paragraph purports to act directly on the property, and is therefore modified to read as follows: "21. IT IS FURTHER ORDERED AND ADJUDGED, that each and everyone of the aforementioned North Dakota properties mentioned and more specifically described in finding of fact No. 18 and each of the subparagraphs thereof, and the Kvam property, were acquired with community property funds of plaintiff and Rozan; that said properties were transferred to defeat plaintiff's rights as described in paragraph 18; that plaintiff is entitled to 65% of the aforementioned properties and of the rents, issues and profits thereof as against Rozan; that Rozan is entitled to 35% of the aforementioned properties and of the rents, issues and profits thereof as against plaintiff; and,"

Paragraph 31 (Cl. Tr. p. 92, lines 22-29) purports to declare a lien on Rozan's interest in the North Dakota land and is therefore modified to read as follows: "31. IT IS FURTHER ORDERED AND ADJUDGED, that plaintiff have, and is hereby given a lien for aforementioned alimony, child support and attorney's fees upon any and all separate property that Rozan now has in the State of California."

Paragraphs 7 and 18 of the judgment purport to act directly on the property by declaring that certain properties "were

and still are the community property of plaintiff and Rozan;''. The judgment is therefore modified by striking in paragraph 7 the words ''became, were and still are the community property of plaintiff and Rozan'' (Cl. Tr. p. 84, lines 27-28) and by striking in paragraph 18 the words ''at all times herein mentioned were and still are the community property of plaintiff and Rozan'' (Cl. Tr. p. 89, lines 6-7) and inserting in lieu thereof in each instance the words ''were acquired with community property funds of plaintiff and Rozan.''

The judgment is affirmed as modified. Defendant shall bear the costs on appeal.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied December 4, 1957.